**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* ILYA ERIC KOLCHINSKY, | ) ) ) Civil Action No. 12-cv-1399 (WHP) |
| Plaintiff, | ) ) ) ) |
| v. | ) ) |
| MOODY'S CORPORATION, MOODY'S INVESTORS SERVICE, INC., and JOHN DOES #1-100, | ) ) ) ) |
| Defendants. | ) ) ) ) |

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Stephen A. Weiss
James A. O'Brien III
Asa R. Danes
SEEGER WEISS LLP
77 Water Street
New York, NY 10005
Telephone: (212) 584-0700
Facsimile: (212) 584-0799
E-mail: sweiss@seegerweiss.com
        jobrien@seegerweiss.com
        adanes@seegerweiss.com

*Attorneys for Plaintiff/Relator*

## TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT .................................................................................... 1

II.     BACKGROUND ....................................................................................................... 1

  A.  FACTUAL BACKGROUND ....................................................................................... 1

  B.  PROCEDURAL BACKGROUND................................................................................. 3

III.    ARGUMENT ............................................................................................................ 3

  A.   STANDARD OF REVIEW ....................................................................................... 3

  B.  THE FCA'S SEALING PROVISIONS DO NOT APPLY ................................................. 4

  C.  RELATION BACK DOCTRINE RENDERS RELATOR'S CLAIMS TIMELY ............ 6

  D.  THE FCA'S PUBLIC DISCLOSURE BAR DOES NOT APPLY……………………….8

  E.  MOODY'S MISSTATES THE LAW AND IGNORES RELATOR'S CLAIMS AND
      ALLEGATIONS IN ARGUING THAT RELATOR FAILS TO STATE A CLAIM ........ 12

  F.  THE FDIC CLAIMS ARE SUFFICIENTLY PLED ..................................................... 20

      1.  Submission Of False Claims Need Not Be Alleged and, In Any Event, Rule 9(b)
          Does Not Apply to Claims For Payment ................................................................ 20

      2.  There Is No Intent Requirement For Reverse False Claims .................................... 21

      3.  Relator Sufficiently Alleges Materiality ................................................................ 22

  G.  THE CONSPIRACY CLAIM IS ADEQUATELY PLED................................................ 22

  H.  MOODY'S FAILS TO ADDRESS OTHER CLAIMS.................................................... 23

  I.  RELATOR'S AIG BAILOUT ALLEGATIONS STATE A CLAIM ............................ 23

  J.  DISMISSAL WITH PREJUDICE IS NOT WARRANTED............................................. 25

IV.     CONCLUSION......................................................................................................... 25

# <u>TABLE OF AUTHORITIES</u>

**Cases:**

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*,
    651 F. Supp. 2d 155 (S.D.N.Y. 2009) ................................................................... 11

*Allison Engine Co. v. U.S. ex rel. Sanders*,
    553 U.S. 662 (2008) ................................................................................... 13, 14

*Atlas Partners, LLC v. STMicroelectronics, Int'l N.V.*,
    2015 WL 4940126 (S.D.N.Y. Aug. 10, 2015) ......................................................... 11

*Ault v. J.M. Smucker Co.*,
    2014 WL 1998235 n.1 (S.D.N.Y. May 15, 2014) ................................................... 10

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ......................................................................................... 3

*Connecticut v. Moody's Corp.*,
    2011 WL 63905 (D. Conn. 2011) ......................................................................... 11

*DiVittorio v. Equidyne Extractive Indus., Inc.*,
    822 F.2d 1242 (2d Cir. 1987) ............................................................................. 17

*Dominicus Americana Bohio v. Gulf & W. Indus., Inc.*,
    473 F. Supp. 680 (S.D.N.Y. 1979) ....................................................................... 21

*E. Bay Mun. Util. Dist. v. Balfour Beatty Infrastructure, Inc.*,
    2014 WL 2611312 (N.D. Cal. June 11, 2014) ......................................................... 6

*Ebeid ex rel. U.S. v. Lungwitz*,
    616 F.3d 993 (9th Cir. 2010) ............................................................................. 17

*Eye Encounter, Inc. v. Contour Art, Ltd.*,
    81 F.R.D. 683 (E.D.N.Y. 1979) ........................................................................... 23

*Flynn v. McDaniel*,
    689 F. Supp. 2d 686 (S.D.N.Y. 2010) ................................................................... 11

*Foglia v. Renal Ventures Management, LLC*,
    754 F.3d 153 (3d Cir. 2014) ............................................................................... 17

*Hayden v. Cnty. of Nassau*,
    180 F.3d 42 (2d Cir. 1999) ................................................................................. 25

*Hayes v. Dep't of Ed*,
    20 F. Supp. 3d 438 (S.D.N.Y. 2014) ..................................................................... 7

*Hericks v. Lincare Inc.*,
  2014 WL 1225660 n.6 (E.D. Pa. Mar. 25, 2014)................................................... 13

*In re Abbott Depakote S'holder Derivative Litig.*,
  909 F. Supp. 2d 984 (N.D. Ill. 2012) .................................................................... 25

*In re Morgan Stanley Mortgage Pass-Through Certificates Litig.*,
  2012 WL 2899356 (S.D.N.Y. July 16, 2012) ........................................................ 12

*Matson v. Bd. of Educ.*,
  631 F.3d 57 (2d Cir. 2011)........................................................................................ 3

*Muller-Paisner v. TIAA*,
  289 Fed. App'x 461 (2d Cir. 2008)......................................................................... 10

*Nielsen v. Rabin*,
  746 F.3d 58 (2d Cir. 2014)........................................................................................ 4

*Pangburn v. Culbertson*,
  200 F.3d 65 (2d Cir. 1999)...................................................................................... 25

*Ping Chen ex rel. U.S. v. EMSL Analytical, Inc.*,
  966 F. Supp. 2d 282 (S.D.N.Y. 2013)................................................................. 8, 11

*Police & Fire Ret. Sys. of City of Detroit v. Goldman, Sachs & Co.*,
  2014 WL 1257782 (S.D.N.Y. Mar. 27, 2014) ....................................................... 19

*Rockwell Int'l Corp. v. United States*,
  549 U.S. 457 (2007)................................................................................................ 11

*U.S. ex rel. Kirk v. Schindler Elevator Corp.*,
  437 Fed. Appx. 13 (2d Cir. 2011) .............................................................. 6, 8, 9, 13

*Tolin v. Standard & Poor's Fin. Servs., LLC*,
  950 F. Supp. 2d 714 (S.D.N.Y. 2013)..................................................................... 19

*Tsirelman v. Daines*,
  794 F.3d 310 (2d Cir. 2015)...................................................................................... 3

*U.S. ex rel. Anti-Discrimination Ctr. of Metro New York, Inc. v. Westchester Cnty., N.Y.*,
  668 F. Supp. 2d 548 (S.D.N.Y. 2009)..................................................................... 22

*U.S. ex rel. Bahrani v. Conagra, Inc.*,
  465 F.3d 1189 (10th Cir. 2006) ........................................................................ 15, 21

*U.S. ex rel. Baltazar v. Warden*,
    635 F.3d 866 (7th Cir. 2011) ................................................................ 9, 10

*U.S. ex rel. Bilotta v. Novartis Pharm. Corp.*,
    50 F. Supp. 3d 497 (S.D.N.Y. 2014)........................................................ 18

*U.S. ex rel. Branch Consultants v. Allstate Ins. Co.*,
    668 F. Supp. 2d 780 (E.D. La. 2009) ........................................................ 5

*U.S. ex rel. Cericola v. Fed. Nat. Mortgage Assoc.*,
    529 F. Supp. 2d 1139 (C.D. Cal. 2007) ..................................................... 7

*U.S. ex rel. Davis v. District of Columbia*,
    591 F. Supp. 2d 30 (D.D.C. 2008) .......................................................... 20

*U.S. ex rel. Davis v. Prince*,
    766 F. Supp. 2d 679 (E.D. Va. 2011) ........................................................ 5

*U.S. ex rel. Duxbury v. Ortho Biotech Products*,
    579 F.3d 13 (1st Cir. 2009).................................................................... 17

*U.S. ex rel. Estate of Cunningham v. Millennium Labs. of California*,
    2014 WL 309374 (D. Mass. Jan. 27, 2014) ................................................ 6

*U.S. ex rel. Feldman v. City of New York*,
    808 F. Supp. 2d 641 (S.D.N.Y. 2011)....................................................... 16

*U.S. ex rel. Feldman v. Van Gorp*,
    2010 WL 5094402 (S.D.N.Y. Dec. 9, 2010) .............................................. 22

*U.S. ex rel. Feldman v. Van Gorp*,
    697 F.3d 78 (2d Cir. 2012)..................................................................... 24

*U.S. ex rel. Folliard v. CDW Tech. Servs., Inc.*,
    722 F. Supp. 2d 20 (D.D.C. 2010) .......................................................... 20

*U.S. ex rel. Gagne v. City of Worcester*,
    565 F.3d 40 (1st Cir. 2009).................................................................... 14

*U.S. ex rel. Grubbs v. Kanneganti*,
    565 F.3d 180 (5th Cir. 2009) .................................................................. 17

*U.S. ex rel. Grupp v. DHL Exp. (USA), Inc.*,
    47 F. Supp. 3d 171 (W.D.N.Y. 2014)......................................................... 7

*U.S. ex rel. Hagerty v. Cyberonics, Inc.*,
    2015 WL 1442497 & n.10 (D. Mass. Mar. 31, 2015).................................... 6

iv

*U.S. ex rel. Heath v. AT & T, Inc.*,
　791 F.3d 112 (D.C. Cir. 2015) ............................................................................ 17

*U.S. ex rel. Int'l Bhd. of Elec. Workers, Local Union No. 98 v. The Farfield Co.*,
　2013 WL 3327505 (E.D. Pa. July 2, 2013) ..................................................... 13, 14

*U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp.*,
　360 F.3d 220 (1st Cir. 2004) ................................................................................ 14

*U.S. ex rel. Kester v. Novartis Pharm. Corp.*,
　23 F. Supp. 3d 242 (S.D.N.Y. 2014) .......................................................... 13, 14, 18

*U.S. ex rel. Kester v. Novartis Pharm. Corp.*,
　43 F. Supp. 3d 332 (S.D.N.Y. 2014) .................................................................. 9, 10

*U.S. ex rel. Kirk v. Schindler Elevator Corp.*,
　601 F.3d 94 (2d Cir. 2010) .............................................................................. 8, 9, 13

*U.S. ex rel. Kirk v. Schindler Elevator Corp.*,
　926 F. Supp. 2d 510 (S.D.N.Y. 2013) ................................................................... 6

*U.S. ex rel. Kreindler v. United Tech Corp.*,
　985 F. 2d 1148 (2nd Cir. 1993) .............................................................................. 8

*U.S. ex rel. Landis v. Tailwind Sports Corp.*,
　51 F. Supp. 3d 9 (D.D.C. 2014) ........................................................................... 13

*U.S. ex rel. Lemmon v. Envirocare of Utah*,
　614 F.3d 1163 (10th Cir. 2010) ........................................................................... 17

*U.S. ex rel. Longhi v. United States*,
　575 F.3d 458 (5th Cir. 2009) ............................................................................... 22

*U.S. ex rel. Lusby v. Rolls-Royce Corp.*,
　570 F.3d 849 (7th Cir. 2009) ............................................................................... 17

*U.S. ex rel. Mikes v. Straus*,
　931 F. Supp. 248 (S.D.N.Y. 1996) ..................................................................... 4, 5

*U.S. ex rel. Milam v. Regents of Univ. of Cal.*,
　912 F. Supp. 868 (D. Md. 1995) ............................................................................ 5

*U.S. ex rel. Parikh v. Premra Blue Cross*,
　2007 WL 1031724 (W.D.Wash. Apr. 3, 2007) ...................................................... 7

*U.S. ex rel. Pervez v. Beth Israel Med. Ctr.*,
  736 F. Supp. 2d 804 (S.D.N.Y. 2010) .................................................................. 13

*U.S. ex rel. Pilon v. Martin Marietta Corp.*,
  60 F.3d 995 (2d Cir.1995) ............................................................................ 4, 5

*U.S. ex rel. Resnick v. Weill Med. Coll. of Cornell Univ.*,
  No. 04 Civ. 3088 (WHP), 2010 WL 476707 (S.D.N.Y. Jan. 21, 2010) ................................ 17

*U.S. ex rel. Rosner v. WB/Stellar IP Owner, L.L.C.*,
  739 F. Supp. 2d 396 (S.D.N.Y. 2010) .................................................................. 8

*U.S. ex rel. Saldivar v. Fresenius Med. Care Holdings, Inc.*,
  972 F. Supp. 2d 1317 (N.D. Ga. 2013) ................................................................. 5

*U.S. ex rel. Stevens v. State of Vt. Agency of Natural
  Res.*, 162 F.3d 195 (2d Cir. 1998) .................................................................. 4, 5

*U.S. ex rel. Taylor v. Gabelli*,
  345 F. Supp. 2d 313 (S.D.N.Y. 2004) .................................................................. 18

*U.S. ex rel. Thayer v. Planned Parenthood of the Heartland*,
  765 F.3d 914 (8th Cir. 2014) ......................................................................... 17

*U.S. ex rel. Wall v. Circle C Const., L.L.C.*,
  697 F.3d 345 (6th Cir. 2012) ......................................................................... 16

*U.S. ex rel. Wilson v. Bristol Myers Squibb, Inc.*,
  2011 WL 2462469 (D. Mass. 2011) ...................................................................... 6

*U.S. ex rel. Wisz v. C/HCA Dev., Inc.*,
  31 F. Supp. 2d 1068 (N.D. Ill. 1998) ................................................................. 4

*U.S. ex rel. Yannacopolous v. Gen. Dynamics*,
  315 F. Supp. 2d 939 (N.D. Ill. 2004) ................................................................. 5

*United States Fisher v. Ocwen Loan Servicing, LLC*,
  2015 WL 4039929 (E.D. Tex. July 1, 2015) ............................................................. 5

*United States v. Baylor Univ. Med Ctr.*,
  469 F.3d 263 (2d Cir. 2006) .......................................................................... 7

*United States v. Bourseau*,
  531 F.3d 1159 (9th Cir. 2008) ........................................................................ 15

*United States v. Huron Consulting Grp., Inc.*,
  843 F. Supp. 2d 464 (S.D.N.Y. 2012) .................................................................. 10

*United States v. McGraw-Hill Companies, Inc.*,
  2013 WL 3762259 (C.D. Cal. July 16, 2013) ........................................................ 19

*United States v. Neifert-White Co.*,
  390 U.S. 228 (1968) ............................................................................................ 19

*United States v. Omnicare, Inc.*,
  No. 07 C 5777, 2011 WL 1059148 (N.D. Ill. Mar. 21, 2011) ................................. 7

*United States v. Robinson*,
  2015 WL 1479396 (E.D. Ky. Mar. 31, 2015) ....................................................... 19

*United States v. Sanford-Brown, Ltd.*,
  788 F.3d 696 (7th Cir. 2015) .............................................................................. 21

*United States v. Wells Fargo Bank, N.A.*,
  972 F. Supp. 2d 593 (S.D.N.Y. 2013) ................................................................. 16

*Walia v. Veritas Healthcare Solutions, L.L.C.*,
  2015 WL 4743542 (S.D.N.Y. Aug. 11, 2015) ..................................................... 22

*Wexner v. First Manhattan Co.*,
  902 F.2d 169 (2d Cir. 1990) ............................................................................... 17

*Wilkins ex rel. U.S. v. State of Ohio*,
  885 F. Supp. 1055 (S.D. Ohio 1995) .................................................................. 21

**Statutes:**

15 U.S.C. § 78o-7(i)(1) ............................................................................................ 24

31 U.S.C. § 3729 ....................................................................................................... 1

31 U.S.C. § 3729(a)(1) ........................................................................................ 14, 23

31 U.S.C. § 3729(a)(1)(A) ....................................................................................... 14

31 U.S.C. § 3729(a)(1)(B) .............................................................................. 13, 14, 16

31 U.S.C. § 3729(a)(1)(G) ..................................................................................... 6, 21

31 U.S.C. § 3729(a)(2) (2009) ............................................................................ 13, 14

31 U.S.C. § 3729(a)(7) (2009) .................................................................... 6, 12, 15, 21

31 U.S.C. § 3729(b)(2)(A)(II) ................................................................................... 13

31 U.S.C. § 3729(b)(4) .................................................................................... 12, 16, 22

31 U.S.C. § 3729(c) ................................................................................................... 13

31 U.S.C. § 3730(e)(4)(A) ........................................................................................... 9

Pub. Law 111-21, 123 Stat. 1617 (2009) ................................................................... 13

**Rules:**

Fed.  R. Civ. P. 12(b)(1) ........................................................................................... 1, 8

Fed. R. Civ. P. 12(b)(6) ......................................................................................... 1, 3, 20

Fed. R. Civ. P. 15(c)(1)(B) ......................................................................................... 6

**Other Authorities:**

Christopher Schmitt, Holding the Enablers Responsible: Applying Sec Rule 10b-5 Liability to
    the Credit Rating Institutions, 13 U. Pa. J. Bus. L. 1035 (2011) ................................................ 19

Wall Street and the Financial Crisis:  The Role of Credit Rating Agencies:  Hearing Before the
    Permanent Subcomm. on Investigations of Homeland Sec. and Gov't Affairs, 111th Cong. 14
    (2011) ................................................................................................................... 10

Credit Rating Agencies and the Next Financial Crisis; Hearing Before the Comm. On Oversight
    and Gov't Reform, 111th Cong. 15 (2009) ............................................................................ 10

Credibility of Credit Ratings, the Investment Decisions Made Based on Those Ratings, and the
    Financial Crisis, Financial Crisis Inquiry Commission 17 ....................................................... 10

Credit Rating Agencies and the Financial Crisis, 110th Cong. 155 (Oct. 22, 2008) .................. 11

U.S. Senate Permanent Subcommittee on Investigations,"Senate Investigations Subcommittee
    Releases Levin-Coburn Report on the Financial Crisis" (Apr. 13, 2011) .............................. 11

The Role and Impact of Credit  Rating Agencies on the Subprime Credit Markets, 110th Cong.
    931 (Sept. 26, 2007) .............................................................................................. 11

Lawrence J. White, Markets: The Credit Rating Agencies, 24 Journal of Economic Perspectives
    211 (2010) ........................................................................................................... 11

Sam Jones, "How Moody's Faltered," Financial Times" (Oct. 17, 2008) ................................... 11

Mark Pitman, "S&P, Moody's Mask $200 Billion of Subprime Bond Risk," Bloomberg.com (June 29, 2007) ...................................................................................................................... 11

## I.    PRELIMINARY STATEMENT

Plaintiff-Relator Ilya Eric Kolchinsky ("Relator") respectfully submits this memorandum of law, pursuant to the *qui tam* provisions of the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733, on behalf of the United States of America (the "Government") and in opposition to the motion to dismiss of Defendants Moody's Corporation and Moody's Investors Service, Inc. (collectively, "Moody's" or "Defendants"). This action centers on certain categories of Moody's credit ratings, how they were improperly manipulated during this country's recent financial crisis, and the FCA violations and damages to the Government caused by many of those ratings.

In its motion, Moody's argues, among other things, that the Amended Complaint (hereinafter, "¶__"), should be dismissed, pursuant to Rules 12(b)(6), 12(b)(1), 9(b) and 15(c), because (1) it was not filed in accordance with the FCA's sealing provisions; (2) it is untimely and does not relate back to the original complaint; (3) it is foreclosed by the FCA's public disclosure bar; (4) it fails to state a claim under the FCA; and (5) it is not pled with the requisite particularity or materiality. As discussed *seriatim* below, these arguments are all without merit and the motion should be denied in its entirety.

## II.   BACKGROUND

### A.    FACTUAL BACKGROUND

As one of the three major credit rating agencies in the United States, the Securities and Exchange Commission ("SEC") granted Moody's application to be a Nationally Recognized Statistical Rating Organization ("NRSRO") as of September 24, 2007 based, in part, on its submission to the SEC of a binding "Code of Conduct" to address questions about the management of "conflicts of interest." ¶¶ 2, 249-264.  Among other ratings at issue in this action, Moody's rated certain structured debt securities: Residential Mortgage Backed Securities ("RMBS"), which are collateralized by pools of residential mortgage loans, and Collateralized Debt Obligations ("CDOs"), which are collateralized by pools of other debt securities that include RMBSs and other CDOs. *Id.* Issuers of RMBSs and CDOs would structure different

classes of notes, or "tranches," secured by the RMBSs and CDOs, and then these issuers would pay Moody's to provide letter-grade credit ratings for each tranche based on its creditworthiness. ¶¶ 43, 88. Ratings ranging from "Aaa," the highest, to "C," the lowest, were issued publicly and published to Moody's website and sold directly to subscribers, including the Government, through Moody's Ratings Delivery Service ("RDS"), which was delivered on either an intra-day or daily basis (but all ratings were published monthly in baseline files). ¶¶ 77-80. Federal agencies also subscribed to the RDS. ¶ 77.

Relator alleges that Moody's deliberately misrepresented the integrity of its ratings, in order to further its own financial interests. *See generally* ¶¶ 236-37.  Moody's publicly stated that it had established policies and procedures to address conflicts of interest through a combination of internal controls and disclosure, which were laid out in various "Codes of Conduct" and official policy statements. *See, e.g.,* ¶¶ 13, 14, 229-35, 238-47. However, Relator identifies numerous occasions when Moody's published ratings that did not accurately reflect its true opinion of credit risks, in violation of Moody's policies. *See, e.g,* ¶¶ 90-158, 159-197. Moody's internal documents reveal it knew that certain classes of CDOs were rapidly deteriorating, that the deterioration of these classes of CDOs would affect the credit risks of CDOs, that the ratings of these CDOs were not adjusted to account for the deterioration of these classes of collateral, and that Moody's nonetheless published the ratings for these CDOs. *Id.* Specifically, Moody's CDO Group failed to downgrade ratings for CDOs and institutions that had invested in them or insured CDOs, such as AIG and the monoline insurers. ¶¶ 90-158. In addition to not properly rating CDOs, Moody's also improperly manipulated its model for rating monoline insurance companies and AIG during the financial crisis, which had far reaching impact. ¶¶ 159-97.[1]

---

[1] The corrupted ratings that Moody's published for AIG and the monoline insurers were used to determine the rating of thousands of insured securities, including most of the municipal bond market. ¶¶ 68, 197.

Relator alleges that Moody's did not want to threaten record profits and, therefore, prevented analysts—despite public representations to the contrary—from issuing credit ratings that accurately represented the falling creditworthiness of various securities. Included among them were CDOs backed by RMBSs, CDOs backed by so-called trust preferred securities, AIG and the monoline insurers, which, as described in the Amended Complaint, were essential in maintaining the overheated structured finance market during the 2007-09 financial crisis as AIG and the monoline insurers acted as insurers for most CDOs. ¶¶ 68-76. Moody's false ratings and their central role in the structured finance market led to the unprecedented intervention by the Government in the private banking sector and billions of dollars of damages to the Government.

### B.    PROCEDURAL BACKGROUND

Relator filed his original complaint under seal on February 2, 2012. (Dkt. 1). During the course of its investigation over more than two years, the Government requested several extensions of the sealing period. After Relator made several disclosures to the Government regarding the facts that were to be included in the Amended Complaint, the Government declined to intervene in this matter on May 28, 2014. Relator filed his Amended Complaint on May 27, 2015. (Dkt. 30.) On July 31, 2015, Moody's filed its motion to dismiss.

## III.   ARGUMENT

### A.    STANDARD OF REVIEW

In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must "accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Tsirelman v. Daines,* 794 F.3d 310, 313 (2d Cir. 2015). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.,* 631 F.3d 57, 63 (2d Cir. 2011) (citation omitted). "Plausibility is distinct from probability, and 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a

recovery is very remote and unlikely.'" *Nielsen v. Rabin,* 746 F.3d 58, 62-63 (2d Cir. 2014) (quoting *Twombly,* 550 U.S. at 556).

### B.    THE FCA'S SEALING PROVISIONS DO NOT APPLY

Defendants argue that the Amended Complaint must be dismissed because Relator failed to file it under seal, in accordance with the FCA provisions governing sealing of FCA complaints. Defendants' Memorandum of Law ("Defs. Mem.") at 7-11. Sealing of an amended complaint, however, is not required here. First, this and other courts have held that the seal requirements are not jurisdictional and their purported violation does not require dismissal of the complaint. *U.S. ex rel. Mikes v. Straus*, 931 F. Supp. 248, 259-60 (S.D.N.Y. 1996) (citing *U.S. ex rel. Pilon v. Martin Marietta Corp.,* 60 F.3d 995, 1000 (2d Cir.1995)); *U.S. ex rel. Wisz v. C/HCA Dev., Inc.*, 31 F. Supp. 2d 1068, 1069 (N.D. Ill. 1998).

Second, the sealing requirement does not apply where, as here, the purpose of the requirement is not implicated. As Moody's recognizes, the purpose of the FCA's sealing provision is "to permit the government to decide whether to intervene at the outset." *U.S. ex rel. Stevens v. State of Vt. Agency of Natural Res.*, 162 F.3d 195, 200 (2d Cir. 1998) (citing *U.S. ex rel. Pilon v. Martin Marietta Corp.,* 60 F.3d 995, 998-99 (2d Cir. 1995); S. Rep. No. 99–345, at 24 (1986), *rev'd on other grounds*, 529 U.S. 765 (2000). Here, the Government was served with a copy of the initial complaint, but declined to intervene, and was sent a copy of the amended complaint. *See U.S. ex rel. Mikes*, 931 F. Supp. at 260-61 (declining to dismiss amended complaint for failure to seal and applying Second Circuit *Pilon* decision where "Government was afforded the opportunity to proceed in this action, but declined," and "pursuant to section 3730(c)(3), the Government continues to be served with copies of all pleadings filed in this action, and may, for good cause shown, intervene at a later date").

Moody's thus misconstrues the intentions of the sealing provision of the FCA. Defs. Mem. at 7-8. Once the Government declines to intervene, then a *qui tam* Relator cannot violate the seal once the case is unsealed. Moody's relies on various decisions, including the Second Circuit's decision in *U.S. ex rel. Pilon* and *U.S. ex. rel. Stevens*, as support for its argument that

4

Relator has violated "mandatory" statutory seal provisions with the amended complaint. Defs. Mem. at 8. However, the complaint in those cases were dismissed because the relators failed to file their *original* complaints under seal in compliance with the statutory requirements. *See, e.g.,* 60 F.3d at 996. In *Pilon*, the Second Circuit emphasized that dismissal was warranted where, unlike here, the purpose of the sealing provision (to provide the Government an opportunity to evaluate the suit and decide whether to intervene) was "uncurably frustrated." *Id*. at 998-99. And *U.S. ex rel. Stevens* was reversed and its "mandatory" language quoted by *Moody's* is *pure dictum.* 163 F.3d at 200.

   Moody's argument that the sealing provisions apply to amended complaints, Defs. Mem. at 9-10, fares no better. The cases that Moody's cites for this proposition, including *U.S. ex rel. Davis v. Prince,* 766 F. Supp. 2d 679, 684 (E.D. Va. 2011), are all from *outside* the Second Circuit and "represent the extreme minority position." *U.S. ex rel. Saldivar v. Fresenius Med. Care Holdings, Inc.*, 972 F. Supp. 2d 1317, 1325 (N.D. Ga. 2013) (holding that amended qui tam complaint that adds claims need not comply with FCA sealing provisions, and noting that *U.S. ex rel. Davis,* 766 F. Supp. 2d at 684, "addresses only in dicta whether a relator may amend a *qui tam* complaint to add new claims"). Indeed, the weight of authority, from this Court and other courts, holds that the section 3730(b)(2) requirements do not apply to amended *qui tam* complaints, including those that add new claims. *See U.S. ex rel. Mikes,* 931 F. Supp. at 259 (refusing dismissal of amended complaint to add new claims because "where the government has not been deprived of any rights, and has asserted no objection to plaintiff's failure to comply with section 3730(b)(2)'s procedural requirements, defendants should not stand to benefit"); *see also U.S. ex rel. Saldivar*, 972 F. Supp. 2d at 1325-27 (citing cases); *United States Fisher v. Ocwen Loan Servicing, LLC,* 2015 WL 4039929, at *3 (E.D. Tex. July 1, 2015); *U.S. ex rel. Branch Consultants v. Allstate Ins. Co.,* 668 F. Supp. 2d 780, 803 (E.D. La. 2009); *U.S. ex rel. Yannacopolous v. Gen. Dynamics*, 315 F. Supp. 2d 939, 952 (N.D. Ill. 2004); *U.S. ex rel. Milam v. Regents of Univ. of Cal.,* 912 F. Supp. 868, 890 (D. Md. 1995).

Third, even if the decisions upon which Moody's heavily relies apply here, they hold or recognize that the sealing provisions do not apply where, as here, the amended and original complaints are not "substantially different." *Davis*, 766 F. Supp. 2d at 684-85. While the Amended Complaint adds a new Count for a "reverse" false claim under subsection § 3729(a)(7) (2006) or § 3729(a)(1)(G) (2010) (¶¶ 328-32), these allegations relate to the existing ones and merely concern the damages caused by Moody's false ratings, not the underlying falsity of the ratings. The Amended Complaint does not add new allegations that are substantially different from those in the original complaint.[2]

## C.     RELATION BACK DOCTRINE RENDERS RELATOR'S CLAIMS TIMELY

Moody's argues that because the AIG and FDIC claims alleged in the Amended Complaint occurred prior to May 27, 2009, they are time barred under the applicable statute of limitations and that the relation back doctrine is inapplicable to *qui tam* complaints. Defs. Mem. at 11-12.

Contrary to this argument, the Amended Complaint is timely and relates back to the original. Where a plaintiff elects to amend the complaint, the amended complaint is not time-barred if its claims arise from the same "conduct, transaction or occurrence" originally pled. Fed. R. Civ. P. 15(c)(1)(B); *U.S. ex rel. Kirk v. Schindler Elevator Corp.*, 926 F. Supp. 2d 510, 519

---

[2] *See E. Bay Mun. Util. Dist. v. Balfour Beatty Infrastructure, Inc.*, 2014 WL 2611312, at *3 (N.D. Cal. June 11, 2014) ("Requiring an amended complaint to be sealed does not benefit the government if the amended complaint relates to the same claims and conduct as the original complaint that the government already had the opportunity to study."). The cases upon which Moody's relies are all from outside the Second Circuit and are distinguishable. *See U.S. ex rel. Wilson v. Bristol Myers Squibb, Inc.*, 2011 WL 2462469, *7 (D. Mass. 2011) (*third* amended complaint added another relator and a "host of new allegations" that were attributable solely to new relator); *U.S. ex rel. Estate of Cunningham v. Millennium Labs. of California*, 2014 WL 309374, at *2 (D. Mass. Jan. 27, 2014) (proposed second amended qui tam complaint included "new allegations about events after this lawsuit was filed" and was not served on government); *U.S. ex rel. Hagerty v. Cyberonics, Inc.*, 2015 WL 1442497, at *17 & n.10 (D. Mass. Mar. 31, 2015) (new allegations of fraud on government were substantially similar and government declined to intervene on similar allegations in original complaint; amended complaint not subject to FCA sealing requirement).

(S.D.N.Y. 2013) (holding that original and amended complaints stem from "same course of conduct" in which defendant "recklessly or intentionally disregarded" the federal statute in question "while submitting claims that falsely certified compliance"). Here, the Relator amended the complaint to add allegations that arise from, and relate to, the same conduct pled in the original complaint.

Moody's misrepresents that the holding in *United States v. Baylor Univ. Med Ctr.*, 469 F.3d 263, 270 (2d Cir. 2006)—that the relation back doctrine does not apply to *qui tam* complaints filed under seal—applies here. Defs. Mem. at 11-12. *Baylor* has been described as an "outlier" and has only been applied to the *Government's complaint in intervention*, not to an amended complaint of a relator proceeding after the Government has declined to intervene. *U.S. ex rel. Cericola v. Fed. Nat. Mortgage Assoc.*, 529 F. Supp. 2d 1139, 1150 (C.D. Cal. 2007) (discussing *Baylor*, 469 F.3d at 268); *see also U.S. ex rel. Grupp v. DHL Exp. (USA), Inc.*, 47 F. Supp. 3d 171, 179 (W.D.N.Y. 2014) (amended *qui tam* complaint related back to original complaint where it was substantially similar to original complaint; rejecting application of *Baylor*), *aff'd*, *U.S. ex rel. Grupp v. DHL Worldwide Exp., Inc.*, 604 F. App'x 40 (2d Cir. 2015); *United States v. Omnicare, Inc.*, No. 07 C 5777, 2011 WL 1059148, at *7 (N.D. Ill. Mar. 21, 2011) (rejecting argument that relation back doctrine does not apply to *qui tam* complaints and distinguishing reasoning of *Baylor* and other cases holding otherwise because they "involve situations where the government sought to intervene in the litigation").[3]

Furthermore, "[t]here is no valid reason to punish an otherwise diligent relator by stripping away claims when the Government, not the relator, is to blame for preventing the defendant from receiving notice of the action against it [after the filing date through the

---

[3] *See U.S. ex rel. Cericola*, 529 F. Supp. 2d at 1149 (holding that relation back doctrine applies to *qui tam* complaints and distinguishing that "[t]he Second Circuit decision cited by Defendant [*Baylor Univ. Med. Ctr.*] focuses on governmental conduct—specifically the government's delay in determining whether to intervene—and holds only that the *government's* complaint-in-intervention does not relate back to the transaction alleged in the original qui tam complaint") (emphasis in original).

unsealing date]." *Hayes v. Dep't of Ed*, 20 F. Supp. 3d 438, 444 (S.D.N.Y. 2014); *see, e.g., U.S. ex rel. Parikh v. Premra Blue Cross*, 2007 WL 1031724, at *3 (W.D.Wash. Apr. 3, 2007) ("It would also be unfair to penalize relators by barring their claims on timeliness grounds when they cannot control a court's decision to permit multiple extensions of the seal.").

Even if the relation back doctrine does not apply, the six-year limitations period of § 3731(b)(1) begins to run on the date the claim is made, or, if the claim is paid, on the date of payment. *See U.S. ex rel. Kreindler v. United Tech Corp.*, 985 F. 2d 1148, 1157 (2nd Cir. 1993). Here, the underpayment of FDIC insurance premiums may be as late as June 2009, depending on timing of payment (¶ 8, 265-75), and the "upside" payment to AIG that was caused by Moody's threat of downgrade in 2008 was paid by the Government to AIG in 2012 (¶¶ 212-13, 225).

### D.    THE FCA'S PUBLIC DISCLOSURE BAR DOES NOT APPLY

Moody's motion under Rule 12(b)(1) seeking dismissal on jurisdictional grounds is without merit. Defs' Mem. at 12. Courts in this Circuit have recently held that the FCA's public disclosure bar does not implicate subject matter jurisdiction. *See Ping Chen ex rel. U.S. v. EMSL Analytical, Inc.*, 966 F. Supp. 2d 282, 293-94 (S.D.N.Y. 2013).

Moody's also contends that Relator's allegations are publicly known and thus barred without showing any "material element" of Relator's claims in the public record. Defs. Mem. at 12-15. Moody's does not (and cannot) point to disclosure of a single material element for the fraud during the ratings marathon, underpayment of FDIC insurance premiums, the manipulation of the models for rating AIG and monolines, or the misrepresentations with respect to AIG—and should not be permitted to do so for the first time on reply.

The Second Circuit has held that for the FCA's public disclosure bar "to apply there must be 'public disclosure' of the information on which the allegation of fraud rests, and this 'public disclosure' must occur through one of the sources enumerated in the statute." *U.S. ex rel. Kirk v. Schindler Elevator Corp.*, 601 F.3d 94, 103 (2d Cir. 2010), *rev'd on other grounds,* 563 U.S. 401 (2011). In addition, the statute indicates that the public disclosure (via an enumerated source) must be of the *material elements* of the "allegations or transactions" on which the claim is based.

8

31 U.S.C. § 3730(e)(4)(A); *see U.S. ex rel. Rosner v. WB/Stellar IP Owner, L.L.C.*, 739 F. Supp. 2d 396, 402 & n.58 (S.D.N.Y. 2010) (citing *U.S. ex rel. Kirk*, 601 F.3d at 103).

Moody's ignores the requirement that it must show that the "material elements" of the "allegations and transactions" were publicly disclosed. Moody's points to general examples about its misconduct but does not show (because it cannot) any material disclosures of (i) the ratings fraud (ratings marathon, model substitution); (ii) FDIC fraud (ratings marathon, model substitution); or (iii) AIG fraud (ratings marathon, model substitution, knowingly false statements about expected losses, non-application of Moody's Joint Default Analysis ("JDA") methodology).

The AIG fraud is especially demonstrative. Despite all the public reports on the AIG bailout, including news stories, congressional hearing reports and books, Moody's cannot point to a single public mention of the "essential elements" of Moody's violation of the JDA methodology or that it lied to the Federal Reserve about AIG's expected losses (just two examples of the factual elements of Moody's fraud). The public disclosure of the JDA methodology is not an essential element—the fact that it was not followed is.

Moody's only selectively quotes *U.S. ex rel. Kester v. Novartis Pharm. Corp.s*, 43 F. Supp. 3d 332, 346 (S.D.N.Y. 2014), Defs. Mem. at 13, but that case sets forth the standard Moody's does not address: "[t]he standard for determining whether a relator's allegations are 'substantially similar' to prior public disclosures is whether the disclosures in question exposed 'all the *essential elements* of the alleged fraud.'" *Id.* at 347 (citing *U.S. ex rel. Kirk v. Schindler Elevator Corp.*, 437 Fed. Appx. 13, 17 (2d Cir. 2011) (emphasis in the original)); *see also U.S. ex rel. Baltazar v. Warden*, 635 F.3d 866, 869 (7th Cir. 2011) (governmental reports of industry-wide practices insufficient to invoke FCA's public disclosure bar where relator adds "vital" "defendant-specific facts" not in public domain). In this context, the "substantial similarity" language in *Kester* refers to the "essential elements," not to general accusations. As noted, Moody's fails to address the "essential elements."  And Relator has added "vital facts" that are specific to Moody's knowingly false statements and other conduct based on his personal

9

knowledge of Moody's ratings practices during the ratings marathon and with respect to AIG and the monolines. *Baltazar*, 635 F.3d at 869.

Moreover, Relator indisputably is the original source for these allegations. Relator has testified regarding his experience at Moody's during the financial crisis before three inquiries— House Oversight, Senate Permanent Investigations and Financial Crisis Inquiry Commission ("FCIC")[4]—"testimony that is an appropriate subject for judicial notice."  *Ault v. J.M. Smucker Co.*, 2014 WL 1998235, at *2 n.1 (S.D.N.Y. May 15, 2014) (citing *Muller-Paisner v. TIAA*, 289 Fed. App'x 461, 466 n. 5 (2d Cir. 2008)). He has spent dozens of hours with House and Senate staffers and investigators from the FCIC, DOJ and SEC.  He has "'direct and independent knowledge' of the fraud that makes him an 'original source' of the information," *United States v. Huron Consulting Grp., Inc.*, 843 F. Supp. 2d 464, 470 (S.D.N.Y. 2012), *aff'd*, 567 F. App'x 44 (2d Cir. 2014), thereby obviating application of the public disclosure bar.[5]

In Footnote 7 of its brief, Moody's argues that the allegations of the AIG claims were publicly known.  But none of the reports cited in Footnote 7 mention that Moody's lied about expected losses or that it did not follow its own methodology (and Relator was involved with the

---

[4] *See Wall Street and the Financial Crisis:  The Role of Credit Rating Agencies:  Hearing Before the  Permanent Subcomm. on Investigations of Homeland Sec. and Gov't Affairs*, 111th Cong. 14 (2011) (statement of Eric Kolchinsky), *available at* http://www.gpo.gov/fdsys/pkg/CHRG-111shrg57321/html/CHRG-111shrg57321.htm; *Credit Rating Agencies and the Next Financial Crisis; Hearing Before the Comm. On Oversight and Gov't Reform*, 111th Cong. 15 (2009), available at http://www.gpo.gov/fdsys/pkg/CHRG-111hhrg55751/html/ CHRG-111hhrg55751.htm; *Credibility of Credit Ratings, the Investment Decisions Made Based on Those Ratings, and the Financial Crisis*, Financial Crisis Inquiry Commission 17 (statement of Eric Kolchinsky) (June 2, 2010), *available at* http://fcic-static.law.stanford.edu/ cdn_media/fcic-testimony/2010-0602-Transcript.pdf.

[5]  In addition to being the original source of the allegations set forth in the Amended Complaint and many of the public statements cited by Moody's in its brief, Relator's testimony during these public hearings did not address key allegations in the Amended Complaint, such as Moody's engaged in its ratings marathon to improperly downgrade (or fail to downgrade) CDOs or that it rigged its ratings models for AIG and the monolines. *See* Am. Compl. ¶¶ 90-158 (ratings marathon); 159-197 (models for AIG and the monolines).

FCIC Report mentioned therein). In Footnote 8 of its brief, Moody's lists several cases and reports that purportedly show public disclosure of criticisms of Moody's ratings. First, Relator objects to these materials as outside the Amended Complaint to the extent they are not judicially noticeable.[6]  In the event they are noticeable, they actually undermine Moody's argument because the listed references either involve the testimony of Relator himself, demonstrating he was an original source, or do not involve an "essential element" of the claims at issue in this case.[7]  Moody's reliance on *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 475-76 (2007), Defs. Mem. at 15, 16, is misplaced. In that case, there was no dispute that the relator was *not* the original source for the claims which were actually tried (as opposed to those pled in the

---

[6]  The Court should disregard the supporting documents cited by Moody's in Footnote 8 of its brief that are improperly-submitted extrinsic evidence because they were not referenced in the Amended Complaint. *Ping Chen ex rel. U.S. v. EMSL Analytical, Inc.*, 966 F. Supp. 2d 282, 294 (S.D.N.Y. 2013); *see also Atlas Partners, LLC v. STMicroelectronics, Int'l N.V.*, 2015 WL 4940126, at *7 (S.D.N.Y. Aug. 10, 2015).

[7]  *Connecticut v. Moody's Corp.*, 2011 WL 63905, at *1 (D. Conn. 2011) (action brought by Connecticut's Attorney General against Moody's does not involve essential elements of this case and documents provided by Kolchinsky to the Connecticut Attorney General's Office were cited liberally in the complaint); *Flynn v. McDaniel*, 689 F. Supp. 2d 686, 687-88 (S.D.N.Y. 2010) (does not involve essential elements of this case); *Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*, 651 F. Supp. 2d 155, 175-79 (S.D.N.Y. 2009) (does not involve essential elements of this case, and Kolchinsky was deposed by plaintiffs and provided documents pursuant to a subpoena); *FCIC Report* (does not involve essential elements of this case, and Kolchinsky testified and provided documents to investigators) (Weiss Decl. Ex. A (excerpts)); *Credit Rating Agencies and the Financial Crisis*, 110th Cong. 155 (Oct. 22, 2008) (does not involve essential elements, and Kolchinsky testified at a different hearing of the same committee in 2009 and provided documents); *U.S. Senate Permanent Subcommittee on Investigations, "Senate Investigations Subcommittee Releases Levin-Coburn Report on the Financial Crisis"* (Apr. 13, 2011) (does not involve essential elements of this case, and Kolchinsky testified and provided documents) (Weiss Decl. Ex. B (excerpts)); *The Role and Impact of Credit  Rating Agencies on the Subprime Credit Markets*, 110th Cong. 931 (Sept. 26, 2007) (does not involve essential elements); Lawrence J. White, *Markets: The Credit Rating Agencies*, 24 Journal of Economic Perspectives 211 (2010) (very general academic paper with no essential elements); Sam Jones, *"How Moody's Faltered," Financial Times"* (Oct. 17, 2008) (does not involve essential elements); Mark Pitman, *"S&P, Moody's Mask $200 Billion of Subprime Bond Risk,"* Bloomberg.com (June 29, 2007) (does not involve essential elements and written prior to key events described in Amended Complaint).

complaint). It simply stands for the proposition that a relator cannot be an "original source" if he or she is not, in fact, the "original source."

### E. MOODY'S MISSTATES THE LAW AND IGNORES RELATOR'S CLAIMS AND ALLEGATIONS IN ARGUING THAT RELATOR FAILS TO STATE A CLAIM

Moody's spends nine pages arguing that Relator fails to adequately allege a false claim, Defs. Mem. at 16-24, but except for mentioning former 31 U.S.C. § 3729(a)(7), Defs. Mem. at 19, and § 3729(b)(4) (defining terms "material to"), Defs. Mem. at 20, Moody's does not address or mention the various and materially different federal provisions on which Relator's four Counts are based, *see* ¶¶ 315-32, nor does it address the elements of those claims. Defs. Mem. at 16-24. Because Moody's bears the burden of showing that the complaint fails to state a claim, *In re Morgan Stanley Mortgage Pass-Through Certificates Litig.*, 2012 WL 2899356, at *1 (S.D.N.Y. July 16, 2012), its undecipherable analysis and failure to specify the provisions under which it is moving warrant denial of its motion for this reason alone.

Putting aside its failure to meet its burden and lack of clarity, Moody's arguments, in any event, lack merit. Moody's repeatedly argues that the allegations fail to plead a false or fraudulent claim for payment from the federal government. Defs. Mem. at 16-24.[8]  Moody's also argues that allegations of its false ratings do not state an FCA claim because mere "false statements" made *to investors* but not presented to *the federal government* are not actionable

---

[8]  *See* Defs. Mem. at 16 ("The FCA requires a false or fraudulent claim for payment from the federal government."); Defs. Mem. at 17 ("registration statement filed with the SEC is not a claim for payment from the federal government"); *id.* ("defendants [must be able to] identify particular false claims for payment that were submitted to the government"); Defs. Mem. at 19 (§ 3729(a)(7) "requires that a false record or statement be made for the purpose of reducing or avoiding a payment to the government"); Defs. Mem. at 21 (claim relating to AIG bailout and collapse fail to allege "presentation to the federal government of a false or fraudulent claim for payment"); *id.* ("no allegation of the presentment of a 'false or fraudulent claim for payment'"); Defs. Mem. at 23 n.14 (complaint "alleges a claim for payment . . . to AIG, which is not a federal agency"); Defs. Mem. at 24 ("there is no allegation of a false claim for payment being presented to the federal government").

under the FCA. Defs. Mem. at 16. It contends that the allegations do not state a "false or fraudulent claim for payment from the *federal government*." *Id*. (emphasis added). These contentions, however, apply the wrong law.

Moody's ignores that, for purposes of § 3729(a)(1)(B),[9] the Fraud Enforcement and Recovery Act, Pub. Law 111-21, 123 Stat. 1617 (2009) ("FERA"), "expands the grounds for liability under the FCA, by 'clarifying' that the FCA covers false claims for government money or property: (1) whether or not the claim was presented to a government employee or official; (2) whether or not the government has custody of the money or property; and (3) whether or not the person or entity specifically intended to defraud the government." *U.S. ex rel. Int'l Bhd. of Elec. Workers, Local Union No. 98 v. The Farfield Co.*, 2013 WL 3327505, at *8 (E.D. Pa. July 2, 2013);[10] *see also Hericks v. Lincare Inc.*, 2014 WL 1225660, at *4 n.6 (E.D. Pa. Mar. 25, 2014) ("FERA reworded the FCA to require only presentment of a false claim for payment, not necessarily directly to the Government or with an intent to defraud the Government.") (citing 111 P.L. 21, 123 Stat. 1617 (May 20, 2009)).

Moody's thus errs in relying upon language in *U.S. ex rel. Kester v. Novartis Pharm. Corp.*, 23 F. Supp. 3d 242, 260 (S.D.N.Y. 2014), to suggest that § 3729(a)(1)(B) requires that an

---

[9]  The majority of circuit courts, including the Second Circuit, and this Court, have followed the view that the FERA amendment to § 3729(a)(2) (which amended and redesignated it as § 3729(a)(1)(B)) applies to civil actions that, as here, are pending on or after June 7, 2008. *See U.S. ex rel. Landis v. Tailwind Sports Corp.*, 51 F. Supp. 3d 9, 46-49 (D.D.C. 2014) (citing *U.S. ex rel. Kirk*, 601 F.3d at 113); *U.S. ex rel. Pervez v. Beth Israel Med. Ctr.*, 736 F. Supp. 2d 804, 811 n.38 (S.D.N.Y. 2010). Hence, § 3729(a)(1)(B) applies here.

[10] Contrary to Moody's interpretation that Relator must allege presentment of a claim to the federal government, the definition of "claim" includes a request or demand that is made to "a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded." 31 U.S.C. 3729(c); *Allison Engine Co. v. U.S. ex rel. Sanders*, 553 U.S. 662, 670 (2008) ("a request or demand may constitute a 'claim' even if the request is not made directly to the Government") (construing §  3729(c) (2009)); *U.S. ex rel. Int'l Bhd. of Elec. Workers, Local Union No. 98*, 2013 WL 3327505, at *8 n.27 (discussing 31 U.S.C. § 3729(b)(2)(A)(II)) (emphasis added).

FCA plaintiff "'must plead the submission of a false claim'" and must "'provid[e] a factual basis to support the plaintiff's assertion that claims were actually submitted to a government program.'"  Defs. Mem. at 17-18. That decision relies upon an 11 year-old First Circuit case, *U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220 (1st Cir. 2004), *see* 23 F. Supp. 3d at 260, that in turn relies upon a pre-FERA version of the FCA that is not at issue in this case, 360 F.3d at 232 (former § 3729(a)(2)), and that is inconsistent with (1) recent amendments by FERA that, as noted above, do not require the actual submission of a claim to a government program (for purposes of 3729(a)(1)(B)), and (2) precedent that abrogated the "presentment" language in *Karvelas* regarding former 3729(a)(2). Thus, even under former § 3729(a)(2), a relator does not have to prove that a defendant presented false claims for payment.  *U.S. ex rel. Gagne v. City of Worcester*, 565 F.3d 40, 46 (1st Cir. 2009) ("Supreme Court [in *Allison Engine Co.*, 553 U.S. at 671,] held that claims under [former] subsections [31 U.S.C. §§ 3729](a)(2) and (a)(3) need not show that a false claim has actually been presented to the government.").

At any rate, Moody's overlooks the fact that one of Relator's claims, regarding its sales of ratings delivery service ("RDS"), including to the Government, constitutes a direct false claim for payment from the Government under either 31 U.S.C. § 3729(a)(1) or (2). ¶¶ 77-80.

Even before the FERA amendments, § 3729(a)(1) did not require direct presentment of a false statement to the Government. *U.S. ex rel. Int'l Bhd. of Elec. Workers,* 2013 WL 3327505, at *9. Moody's direct-presentment argument also ignores that under 31 U.S.C. § 3729(a)(1)(A), the FCA imposes liability for knowingly presenting, or *causing to be presented*, a false claim for payment or approval.  In this respect, Moody's ignores that the well-pleaded allegations plausibly state that Moody's knowingly *caused* (in the form of false or misleading ratings) to be presented a false claim for payment. ¶¶ 267-83, 315-19. The allegations specifically state that Moody's knowingly caused, among other things, insured depository institutions ("IDIs") to rely upon its knowingly false credit ratings in reporting their capitalizations to the FDIC and to file false statements, and as a result the FDIC collected much less in deposit insurance premiums than it would have if the IDI assets had been properly rated. *Id*

14

Furthermore, the allegations specifically state that Moody's knowingly caused AIG to present a false claim for "upside" from the government. ¶¶ 211-13, 225. Moody's also fails to recognize that the FCA imposes liability on anyone who "knowingly makes, uses, or *causes* to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(7) (emphasis added). Here, the amended complaint plausibly alleges that Defendants knowingly caused to be made a false statement to conceal, avoid or decrease an obligation to pay money to the Government. ¶¶ 328-32.  In this regard, the allegations plausibly state that Moody's false NRSRO certifications and false credit ratings concealed or decreased an obligation to pay money to the government because they (1) caused IDIs to file false statements with the FDIC and other regulators, (2) to rely upon its knowingly false credit ratings in reporting their capitalizations to the FDIC, and (3) caused the FDIC to collect much less in deposit insurance premiums than it would have received if the assets of IDIs were properly rated by Moody's and if Moody's had disclosed its true opinion of the creditworthiness of those assets. *Id*. ¶ 267-83.[11]

Furthermore, given the foregoing discussion of the applicable FCA law, Moody's argument that "a registration statement filed with the SEC is not a claim for payment from the federal government," and is not "used to obtain payments from the federal government," Defs. Mem. at 17, ignores the elements of Relator's claims and reasonable inferences in his favor. Moody's, for example, ignores reasonable inferences that through its non-compliance with its SEC-certified role as an NRSRO, it caused the filing of false statements in the form of the SEC registration statements, which in turned caused government-sponsored entities (such as Fannie

---

[11]  Defendants' argument that the FCA requires, for a reverse false claim, "a preexisting obligation to pay money to the government," Defs. Mem. at 16, is incorrect. Contrary to Moody's argument, the FCA does not define of "obligation" as a "preexisting" obligation. Defs. Mem. at 16. *See U.S. ex rel. Bahrani v. Conagra, Inc.*, 465 F.3d 1189, 1201-02 (10th Cir. 2006); *United States v. Bourseau*, 531 F.3d 1159, 1169-70 (9th Cir. 2008). Even if a preexisting obligation were required, the Amended Complaint sets forth reasonable inferences of such an obligation.

Mae and Fannie Mac) and other entities to purchase Moody's rated securities and, as noted above, caused the FDIC to collect less in deposit insurance premiums than it should have received.  ¶¶ 24, 27, 267, 287-92.

In addition, Moody's arguments ignore that under 31 U.S.C. 3729(a)(1)(B), the FCA imposes liability for knowingly making, using, or *causing* to be made or used, a false record or statement that is material to a false or fraudulent claim.[12]  In this regard, § 3729(a)(1)(B) "is drafted so as to impose FCA liability on one who makes a false statement to a recipient of federal funds, even if that statement is never actually passed onto or relied upon by the Government." *U.S. ex rel. Feldman v. City of New York*, 808 F. Supp. 2d 641, 656 n.7 (S.D.N.Y. 2011). Here, the well-pleaded allegations plausibly state that Moody's knowingly, made, used, or caused to be made or used, a false record or statement material to a false claim. ¶¶ 267-83, 320-24. *See generally United States v. Wells Fargo Bank, N.A.*, 972 F. Supp. 2d 593, 623 (S.D.N.Y. 2013) ("courts have repeatedly held that the 'use of fraudulent information to induce the Government to provide a loan guarantee' or other contract 'constitutes a false claim under the FCA'"); *id.* at 626 (allegations that "Wells Fargo's false statements that it complied with HUD regulations induced the Government to insure loans it otherwise would not insure—that is, that HUD would not have guaranteed the loan but for the Bank's misstatements," stated actionable FCA claim).

Defendants further argue that the "false ratings" allegations have not been pled with specificity—i.e., they do not allege "which statements – i.e., ratings – were 'false'"; they do not "plausibly allege that all of Moody's ratings were materially false, nor . . . give rise to an inference that Moody's published any false ratings knowingly."  Defs. Mem. at 16. Contrary to Moody's argument, Defs. Mem. at 16, the amended complaint sets forth reasonable inferences

---

[12]   "Material to" is broadly defined as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property."  31 U.S.C. § 3729(b)(4).  "[A] false statement is material if it has a natural tendency to influence, or is capable of influencing the decision of the decisionmaking body to which it was addressed."  *U.S. ex rel. Wall v. Circle C Const., L.L.C.*, 697 F.3d 345, 356 (6th Cir. 2012) (citation omitted).

that Moody's ratings were materially false and that Moody's knowingly published false ratings. *See* ¶¶ 3-28, 265-83.

Moreover, "where, as here, much of the factual information needed to fill out plaintiff's complaint lies peculiarly within the opposing parties' knowledge, the general rule disfavoring allegations founded upon [information and] belief ought not to be rigidly enforced." *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1248 (2d Cir. 1987). Further, "[w]here pleading is permitted on information and belief, a complaint [satisfies Rule 9(b) where it] adduce[s] specific facts supporting a strong inference of fraud or it will not satisfy even a relaxed pleading standard." *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990). This Court has also recognized that "'a relator's complaint, if it cannot allege the details of an actually submitted false claim, may nevertheless survive by alleging particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted.'" *U.S. ex rel. Resnick v. Weill Med. Coll. of Cornell Univ.*, No. 04 Civ. 3088 (WHP), 2010 WL 476707, at *5 (S.D.N.Y. Jan. 21, 2010) (quoting *U.S. ex rel. Grubbs v. Kanneganti,* 565 F.3d 180, 191 (5th Cir. 2009)). At the same time, because in many instances Moody's did not submit false claims itself, but caused others to, knowing the specific details of those claims would not aid it in developing its defense. *See U.S. ex rel. Duxbury v. Ortho Biotech Products*, 579 F.3d 13, 29 (1st Cir. 2009). Moody's further ignores decisions of the First, Third, Fifth, Seventh, Eighth, Ninth, Tenth, and D.C. Circuits holding that the precise details of FCA claims are not an indispensable requirement of a viable FCA complaint, especially not where, as here, Relator alleges that Defendants knowingly caused a third party to submit a false claim.[13]

---

[13] *See  U.S. ex rel. Heath v. AT & T, Inc.*, 791 F.3d 112, 126 (D.C. Cir. 2015); *U.S. ex rel. Thayer v. Planned Parenthood of the Heartland*, 765 F.3d 914, 917-18 (8th Cir. 2014); *Foglia v. Renal Ventures Management, LLC*, 754 F.3d 153 (3d Cir. 2014); *Duxbury*, 579 F.3d at 29; *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998-999 (9th Cir. 2010); *U.S. ex rel. Lemmon v. Envirocare of Utah*, 614 F.3d 1163, 1172 (10th Cir. 2010); *U.S. ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 854-855 (7th Cir. 2009); *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (2009).

Here, Relator has alleged in detail the particulars of the fraudulent scheme and offers particular and reliable indicia that false ratings were actually relied upon as a result of the scheme—such as, for example, the specific time frames during which such false ratings were fraudulently provided, the identity of the Defendants involved in the scheme, the types of securities involved, and specific facts showing that as a result of the scheme, the FDIC collected less in deposit insurance premiums. ¶¶ 3-28, 265-83; Am. Compl. Exs. A & B.[14]  Collectively, these allegations create a reasonable inference that Moody's knowingly caused to be presented a false claim for payment, or knowingly caused the use of false statements that were material to a false claim, or were material to an obligation to pay money to the federal government. Further, because this "case involves complex or extensive fraudulent schemes," and "the fraudulent conduct is alleged to have taken place over a number of years, Rule 9(b) is relaxed. *U.S. ex rel. Taylor v. Gabelli*, 345 F. Supp. 2d 313, 326 (S.D.N.Y. 2004). Indeed, "[t]o approach the issue otherwise would allow the more sophisticated to escape liability ... due to the complexity of their scheme and their deviousness in escaping detection." *Id*. (quotation omitted). In setting forth a complex and far-reaching scheme, a relator need allege only representative samples of fraudulent conduct to satisfy Rule 9(b). *U.S. ex rel. Bilotta v. Novartis Pharm. Corp.*, 50 F. Supp. 3d 497, 518 (S.D.N.Y. 2014). Relator has sufficiently pled such representative samples. *See* Am. Compl. Exs. A and B (list of certain falsely rated CDOs). Further, even the decision upon which Moody's heavily relies recognizes that "[w]here numerous false claims are involved, the plaintiff may satisfy Rule 9(b) by providing sufficient identifying information about those false claims." *U.S. ex rel. Kester*, 23 F. Supp. 3d at 260. Relator has done so here.

Defendants also contend that false ratings cannot amount to a false claim because "[c]redit ratings are opinions and matters of judgment, as many courts have clearly held."  Defs.

---

[14]  Moody's argument that Relator "do[es] not allege that any of these institutions actually underpaid their FDIC premiums due to Moody's ratings, much less specify when such payments were made or the facts that would support such a claim," Defs. Mem. at 18, ignores these allegations and draws inferences in its favor, and is therefore unavailing.

Mem. at 16 (citations omitted). However, a credit rating is objectively false where, as here, the rating agency represented the objectivity and accuracy of its ratings. ¶¶ 236-49; *see United States v. McGraw-Hill Companies, Inc.*, 2013 WL 3762259, at *5-8 (C.D. Cal. July 16, 2013) (denying motion to dismiss where defendant rating agencies argued that credit ratings could not be basis of fraud claim because "general, subjective claim about a product is nonactionable puffery"). As *McGraw-Hill Companies, Inc.* noted, the "government has pleaded that each of these CDOs were 'rated' with 'ratings' that did not accurately reflect their creditworthiness, and consequently that these did not represent what S&P stated that they should." *Id.* at 10.[15]

Even assuming that credit ratings are a subjective rather than objective matter, the suggestion that the FCA reaches only those claims that are objectively false is inconsistent with the Supreme Court's admonition that the term "false or fraudulent claim" as used in the FCA is to be interpreted broadly. *United States v. Neifert-White Co.,* 390 U.S. 228, 232 (1968) (FCA was "intended to reach all types of fraud, without qualification, that might result in financial loss to the Government"); *United States v. Robinson*, 2015 WL 1479396, at *5 (E.D. Ky. Mar. 31, 2015) ("proof of an objective falsehood is not the only means of establishing an FCA claim"). Moody's argument fails also because Relator plausibly alleges that Moody's disseminated credit ratings that it knew were false in order to perpetrate the false claims alleged in the Amended Complaint. ¶¶ 102-24, 168-97. *See generally Police & Fire Ret. Sys. of City of Detroit v. Goldman, Sachs & Co.*, 2014 WL 1257782, at *5 (S.D.N.Y. Mar. 27, 2014) (noting that credit ratings are "opinions" but indicating that claim of credit ratings fraud is actionable where it involves "knowingly mak[ing] a false statement in order," such as "the ratings agencies' knowledge of the ratings' falsity at the time they were made"); *Tolin v. Standard & Poor's Fin.*

---

[15] Where, as here, credit ratings can be shown to be false based on objective evidence, they are not protected.  *See* Christopher Schmitt, *Holding the Enablers Responsible: Applying Sec Rule 10b-5 Liability to the Credit Rating Institutions*, 13 U. Pa. J. Bus. L. 1035, 1058 n.33 (2011) ("'Thus, a pure deductive opinion, which is provable as true or false on the basis of objective evidence, carries no immunity.' . . . Th[is] . . . conceptualization would appear applicable to hold the credit ratings agencies liable.") (citation omitted).

*Servs., LLC*, 950 F. Supp. 2d 714, 722-23 (S.D.N.Y. 2013) (claim of credit rating fraud actionable where allegations show entity that made ratings did not believe them when made).

### F.   THE FDIC CLAIMS ARE SUFFICIENTLY PLED

#### 1.   Submission Of False Claims Need Not Be Alleged and, In Any Event, Rule 9(b) Does Not Apply to Claims For Payment

Moody's contends that Relator, in his FDIC claims, fails to plead submission to the Government of false "*claims*" for payment in compliance with "the heightened pleading requirements" of Rule 9(b). Defs. Mem. at 17-18 (emphasis in original). As discussed above, Relator need not to allege submission of a false claim to the Government to prevail. In any event, Moody's erroneously argues that Rule 9(b) applies to the existence of "claims" for payment. Defs. Mem. at 17 (9(b) requires factual support for assertions that "claims were actually submitted to a government program"). Courts have held Rule 9(b) applies to the falsity of a claim, not to whether the *existence* of a claim for payment is pled with particularity. *See U.S. ex rel. Folliard v. CDW Tech. Servs., Inc.*, 722 F. Supp. 2d 20, 26-28 (D.D.C. 2010) (quoting *U.S. ex rel. Davis v. District of Columbia*, 591 F. Supp. 2d 30, 37 (D.D.C. 2008)).

At any rate, as discussed above, Moody's argument that Relator fails to "allege that any of the[] [IDIs] actually underpaid their FDIC premiums due to Moody's ratings," or "specify when such payments were made or the facts that would support such a claim," Defs. Mem. at 18, ignores that, in satisfaction of Rules 8, 9(b), and 12(b)(6), Relator has alleged in detail the particulars of the fraudulent scheme and offers particular and reliable indicia that false ratings were actually relied upon as a result of the scheme. *See supra* at 17-18 (citing ¶¶ 3-28, 265-83); Am. Compl. Exs. A & B.

Moody's argument that one of the alleged examples of a claim for payment, involving Citibank, fails to satisfy Rule 9(b) because it is based on "information and belief" that are not "peculiarly within the adverse parties' knowledge," Defs. Mem. at 18-19, is unavailing.  As noted above, since this issue concerns allegations of a claim for payment as opposed to whether such claims were false, *see id.*, it need not be stated with particularity. *U.S. ex rel. Folliard,* 722

F. Supp. 2d at 26-28. Even assuming that the heightened pleading requirement of Rule 9(b) applies here, Moody's erroneously contends that "Citibank's FDIC reporting is not likely within Moody's knowledge" or "peculiarly so" because Citibank is not the adverse party here. Defs. Mem. at 18. As this Court has held, "the strict requirements of Rule 9(b) are addressed primarily to the situation where the plaintiff was defrauded directly by the defendant." *Dominicus Americana Bohio v. Gulf & W. Indus., Inc.*, 473 F. Supp. 680, 693 (S.D.N.Y. 1979). Thus, "[w]here a plaintiff is claiming instead to have been injured as the result of a fraud perpetrated on a third party, the circumstances surrounding the transaction are peculiarly within the defendant's knowledge," and [t]herefore, the requirement of particularity will be relaxed, and the plaintiff is entitled to rely on information and belief in support of the allegations." *Id.*

In any event, the allegations demonstrate a reasonable inference that, had Moody's published its true credit ratings for the assets held by Citibank, Citibank's capital group during the relevant period would have dropped from the "Well Capitalized" category that it reported to either "Adequately Capitalized" or "Under Capitalized." ¶ 276. Furthermore, Moody's ignores that the specifics of the contracts for RDS are peculiarly within Moody's knowledge. ¶ 77.

### 2.    There Is No Intent Requirement For Reverse False Claims

Moody's contention that Relator's reverse false claim must allege that a false record or statement was *intentionally* made "for the purpose of reducing or avoiding a payment to the government reverse false claim," Defs. Mem. at 19, misstates the law.  There is no intent requirement for reverse false claims under 31 U.S.C. § 3729(a)(1)(G) or its former provision, § 3729(a)(7) (2009), since "knowledge" is broadly defined to not require intent. *See U.S. ex rel. Kane*, 2015 WL 4619686, at *5 ("This knowledge standard [for reverse false claims] expressly requires no proof of specific intent to defraud."); *see also United States v. Sanford-Brown, Ltd.*, 788 F.3d 696, 701 (7th Cir. 2015) ("the FCA does not require proof of specific intent to defraud");  *U.S. ex rel. Bahrani v. Conagra, Inc.*, 465 F.3d 1189, 1206 (10th Cir. 2006) ("specific intent" not required under § 3729(a)(7)); *Wilkins ex rel. U.S. v. State of Ohio*, 885 F. Supp. 1055, 1059 (S.D. Ohio 1995) (same). At any rate, even if such intent were required, the

allegations plausibly allege or set forth reasonable inferences that Moody's false ratings were made with the intent to reduce FDIC premiums. ¶279-83.

### 3.    Relator Sufficiently Alleges Materiality

Moody's argument that its failure to downgrade securities properly was not material to the FDIC premium payments, Defs. Mem. at 20, is meritless. The term "material" is defined broadly to mean "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." § 3729(b)(4). Contrary to Defendants' self-serving, home-made test for determining materiality (that is not part of the FCA's definition of "material"), Defs. Mem. at 20, the allegations support the reasonable inference that Moody's made, used, or caused the making or use of false statements that had "the potential to influence the government's decisions." *U.S. ex rel. Longhi v. United States*, 575 F.3d 458, 470 (5th Cir. 2009). The complaint plausibly alleges that IDIs relied upon the false credit ratings in reporting their capitalizations to the FDIC and other federal regulators. ¶ 271-74.

Defendants also fail to address "materiality" in the context of Relator's other claims. For example, Defendants fail to address whether their allegedly false NRSRO application and annual certifications were capable of influencing the government's payment decisions. Even if they had, these allegations satisfy the "materiality" test. The false NRSRO application and annual certifications were a pre-condition of eligibility and payment, ¶¶ 2-5, 12-16, 24, 28, 248-64, and thus were capable of influencing the Government's payment decisions, and were integral to it.[16]

### G.    THE CONSPIRACY CLAIM IS ADEQUATELY PLED

Contrary to Moody's argument, Defs. Mem. at 25, Rule 9(b) does not apply to conspiracy allegations. *Walia v. Veritas Healthcare Solutions, L.L.C.*, 2015 WL 4743542, at *9 (S.D.N.Y.

---

[16]   The materiality inquiry is objective; it "focuses on the potential effect of the false statement when it is made rather than on the false statement's actual effect after it is discovered." *See U.S. ex rel. Feldman v. Van Gorp*, 2010 WL 5094402, at *2 (S.D.N.Y. Dec. 9, 2010). For this reason, actions that government officials take upon learning of a false statement cannot render the statement immaterial. *See U.S. ex rel. Anti-Discrimination Ctr. of Metro New York, Inc. v. Westchester Cnty., N.Y.*, 668 F. Supp. 2d 548, 569-70 (S.D.N.Y. 2009).

Aug. 11, 2015) . Defendants' argument that no conspiracy claim is alleged because Relator fails to plead an "agreement" to commit an FCA violation, Defs. Mem. at 25, ignores allegations that Moody's "conspired with" the "John Does," ¶¶ 44, 326, thus supporting the reasonable inference of an agreement. Further, the "intra-corporate conspiracy doctrine" does not apply because the complaint does not allege that Moody's conspired with its own subsidiaries or employees. Rather, the allegations, or reasonable inferences, show that the "John Does" are "corporations, limited liability companies, or other lawful business entities, or individuals, *through which Defendants do business*." ¶¶ 44, 326 (emphasis added), and thus show a reasonable inference that the "John Does" are separate from Moody's. Relator also is not required to "name the conspirators," Defs. Mem. at 25, where, as here, he alleges "John Does" as conspirators. *See Eye Encounter, Inc. v. Contour Art, Ltd.*, 81 F.R.D. 683, 689 (E.D.N.Y. 1979) ("There is ... no requirement that a plaintiff name as parties-defendants all co-conspirators as long as their existence is set forth in the complaint.") (citing cases).

### H.     MOODY'S FAILS TO ADDRESS OTHER CLAIMS

Dismissal of the amended complaint is also unwarranted because Moody's fails to address, and has waived the opportunity to address, various claims of Relator.  Specifically, Moody's does not address the claim that Moody's sales of ratings delivery service ("RDS"), including to the Government, constitutes a direct false claim for payment under either 31 U.S.C. § 3729(a)(1) or (2). ¶¶ 77-80. Moody's also does not address Relator's claim that it committed FCA violations based on its NRSRO application and annual certifications, all of which were factually and legally false, and which were material to the Government's payment decision. ¶¶ 2-5, 12-16, 18, 23, 24, 28, 46, 55, 81, 86, 94, 95, 248-64.

### I.     RELATOR'S AIG BAILOUT ALLEGATIONS STATE A CLAIM

Because it cannot legally challenge the AIG fraud claim, Moody's strategy is to spend four pages sowing confusion.  Defs. Mem. at 20-24. To set the record straight, the AIG fraud

claim is that Moody's *caused* the Federal Reserve to make payments from ML II and ML III (as defined in the Amended Complaint)[17] in the amount of $3.3 billion to AIG as "upside." ¶¶ 211-13, 225. This claim is viable. "[U]nder a fraudulent inducement theory, 'subsequent claims for payment made under the contract [that] were not literally false, [because] they derived from the original fraudulent misrepresentation, [are also] ... actionable false claims.'" *U.S. ex rel. Feldman v. Van Gorp*, 697 F.3d 78, 91 (2d Cir. 2012) (citation omitted). The fraudulent representation relates to the statement about the "expected losses" on AIG's CDO and RMBS portfolio made by Moody's to the Federal Reserve and which were knowingly false. ¶¶ 220-24. These statements caused and were material to the Federal Reserve's decision to pay the upside claim. ¶¶ 215-16, 217.

In addition, the claim is false under the implied certification theory. In making its statements, Moody's was implicitly certifying that (1) its conduct was not classified as a "prohibited act and practice"[18] (¶¶ 202-06, 219, 226-27); and (2) it was following policies with respect to conflicts of interest and objectivity as set out in NRSRO application and recertification. ¶¶ 226, 237.

Moody's makes several false statements. Moody's claims that the statement about "expected losses" is not alleged to be false. Defs. Mem. at 24. But paragraph 220, stating that "Moody's statement that it expected the losses on AIG's portfolio to be much lower was knowingly false," disproves this assertion. Relator also sufficiently pleads reckless disregard of the truth by Moody's listing public and non-public evaluations of "expected losses," which were materially higher than those conveyed to the Federal Reserve. ¶¶ 221-24. Materiality of the false statement to the decision to pay the upside is also well pled. ¶ 215. The recitation of Moody's false claim is immediately followed by "Over the weekend, we will be reviewing our options here, *including the upside sharing arrangements* in the structure." ¶ 219 (emphasis added).

---

[17] Both ML II and ML III were owned by the Federal Reserve.

[18] 15 U.S.C. § 78o-7(i)(1) defines these practices as *per se* "unfair, coercive, or abusive."

### J.      DISMISSAL WITH PREJUDICE IS NOT WARRANTED

Moody's request that, in the event its motion is granted, Relator's claims be dismissed "with prejudice," Defs. Mem. at 11, 25, should be rejected. "When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint."  *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999). Courts have declined to dismiss complaints "with prejudice" where, as here, they have not previously ruled upon the issues. *See In re Abbott Depakote S'holder Derivative Litig.*, 909 F. Supp. 2d 984, 1000 (N.D. Ill. 2012) (granting leave to amend where court had not "previously ruled" upon amended claim). Because the Court has not previously ruled upon the claims in this case, Relator has amended his complaint only once, and "it is [not] 'beyond doubt that the plaintiff can prove no set of facts in support' of his amended claims," *Pangburn v. Culbertson*, 200 F.3d 65, 71 (2d Cir. 1999), in the event the Court concludes that any claims are insufficiently pleaded, Relator requests leave to amend them. Alternatively, Relator requests an opportunity to file a motion for leave to amend, particularly because Moody's pre-motion letter did not address the majority of issues in its brief.

### IV.    CONCLUSION

For the foregoing reasons, Moody's motion to dismiss should be denied.

Dated:  New York, New York
     October 2, 2015

Respectfully submitted,

SEEGER WEISS LLP

By:/s/Stephen A. Weiss
    Stephen A. Weiss
    James A. O'Brien III
    Asa R. Danes
    77 Water Street
    New York, NY 10005
    Telephone:  (212) 584-0700
    Facsimile:  (212) 584-0799
    E-mail: sweiss@seegerweiss.com
          jobrien@seegerweiss.com
          adanes@seegerweiss.com

*Attorneys for Plaintiff/Relator*