UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA, *ex rel.* ILYA ERIC KOLCHINSKY,

          Plaintiff,

  -against-

MOODY'S CORPORATION, MOODY'S INVESTORS SERVICE, INC., and JOHN DOES #1-100,

          Defendants.

No. 12 Civ. 1399 (WHP)

# DEFENDANTS' REPLY MEMORANDUM OF LAW
# IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS

SATTERLEE STEPHENS LLP

James J. Coster
Joshua M. Rubins
Glenn C. Edwards

230 Park Avenue, Suite 1130
New York, NY 10169
(212) 818-9200
(212) 818-9606/7 (fax)

*Attorneys for Defendants*

2310910_3

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ..........................................................................................1

ARGUMENT .........................................................................................................................2

    I.    RELATOR HAS NOT DEMONSTRATED COMPLIANCE WITH THE FCA SEALING PROVISIONS ........................................................................2

    II.    THE CLAIMS IN THE AMENDED COMPLAINT DO NOT RELATE BACK AND ARE TIME-BARRED ..................................................................4

    III.    THE FDIC CLAIMS ARE NOT STATED WITH PARTICULARITY AND DO NOT STATE A CLAIM ............................................................................6

    IV.    THE AIG CLAIMS ARE INSUFFICIENT AND SUBJECT TO THE PUBLIC DISCLOSURE BAR ..................................................................................9

    V.    ALL OF THE CLAIMS ARE BARRED BY THE PUBLIC DISCLOSURE BAR ................................................................................................11

    VI.    THE REMAINDER OF THE COMPLAINT SIMILARLY FAILS TO STATE A CLAIM ........................................................................................13

CONCLUSION ....................................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Avile v. Feitell*,
 2008 WL 2139153 (S.D.N.Y. 2008) ................................................................................. 4

*Caldwell v. Berlind*,
 543 Fed. App'x 37 (2d Cir. 2013) .................................................................................... 5

*Chen v. Major League Baseball Props., Inc.*,
 798 F.3d 72 (2d Cir. 2015) ......................................................................................... 7, 12

*Dominicus Americana Bohio v. Gulf & Western Indus., Inc.*,
 473 F. Supp. 680 (S.D.N.Y. 1979) ................................................................................... 7

*Hayes v. Dep't of Educ.*,
 20 F. Supp. 3d 438 (S.D.N.Y. 2014) ................................................................................ 5

*Pencheng Si v. Laogai Research Found.*,
 71 F. Supp. 3d 73 (D.D.C. 2014) ..................................................................................... 8

*Ping Chen ex rel. United States v. EMSL Analytical, Inc.*,
 966 F. Supp. 2d 282 (S.D.N.Y. 2013) ............................................................................ 13

*Rockwell Int'l. Corp. v. United States*,
 549 U.S. 457 (2007) ....................................................................................................... 12

*United States ex rel. Adams v. Wells Fargo Bank Nat'l Ass'n*,
 2013 WL 6506732 (D. Nev. 2013) ................................................................................ 15

*United States ex rel. Bahrani v. ConAgra, Inc.*,
 624 F.3d 1275 (10th Cir. 2010) ....................................................................................... 7

*United States ex rel. Branch Consultants, LLC v. Allstate Ins. Co.*,
 668 F. Supp. 2d 780 (E.D. La. 2009) ............................................................................... 3

*United States ex rel. Davis v. Prince*,
 766 F. Supp. 2d 679 (E.D. Va. 2011) .............................................................................. 3

*United States ex rel. Feldman v. Van Gorp*,
 697 F.3d 78 (2d Cir. 2012) ............................................................................................ 11

*United States ex rel Fisher v. Ocwen Loan Servicing, LLC*,
 2015 WL 4039929 (E.D. Tex. 2015) ............................................................................... 3

*United States ex rel. Kester v. Novartis Pharms. Corp.*,
   23 F. Supp. 3d 242 (S.D.N.Y. 2014) .................................................................. 8, 10, 12, 13

*United States ex rel. Kester v. Novartis Pharms. Corp.*,
   43 F. Supp. 3d 332 (S.D.N.Y. 2014) .............................................................................. 12

*United States ex rel. Kreindler v. United Tech Corp.*,
   985 F.2d 1148 (2d Cir. 1993) ........................................................................ 5, 6, 10, 12

*United States ex rel. Lissack v. Sakura Global Capital Markets, Inc.*,
   2003 WL 21998968 (S.D.N.Y. 2003),
   *aff'd*, 377 F.3d 145 (2d Cir. 2004) ................................................................................. 9

*United States ex rel Mikes v. Straus*,
   931 F. Supp. 248 (S.D.N.Y. 1996) .................................................................................. 3

*United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*,
   608 F.3d 871 (1st Cir. 2010) ........................................................................................... 5

*United States ex rel. Moore v. GlaxoSmithKline, LLC*,
   2013 WL 6085125 (E.D.N.Y. 2013) ............................................................................... 5

*United States ex rel. Pilon. v. Martin Marietta Corp.*,
   60 F.3d 995 (2d Cir. 1995) .............................................................................................. 4

*United States ex rel. Rosner v. WB/Stellar IP Owner, LLC*,
   739 F. Supp. 2d 396 (S.D.N.Y. 2010) ........................................................................... 10

*United States ex rel. Saldivar v. Fresenius Med. Care Holdings, Inc.*,
   972 F. Supp. 2d 1317 (N.D. Ga. 2013) ........................................................................... 3

*United States ex rel. Schaengold v. Memorial Health, Inc.*,
   2014 WL 7272598 (S.D. Ga. 2014) ................................................................................ 6

*United States ex rel. Summers v. LHC Group, Inc.*,
   623 F.3d 287 (6th Cir. 2010) .......................................................................................... 4

*United States ex rel. Wilson v. Bristol-Myers Squibb, Inc.*,
   2011 WL 2462469 (D. Mass. 2011),
   *aff'd*, 750 F.3d 111 (1st Cir. 2014) ................................................................................. 3

*United States ex rel. Yannacopolous v. Gen. Dynamics*,
   315 F. Supp. 2d 939 (N.D. Ill. 2004) .............................................................................. 3

*United States v. Baylor Univ. Med. Ctr.*,
   469 F.3d 263 (2d Cir. 2006) ............................................................................................ 5

*United States v. N.Y. Med. College*,
  252 F.3d 118 (2d Cir. 2001) ................................................................................................12

*United States v. N.Y. Soc. for the Relief of the Ruptured & Crippled*,
  2014 WL 3905742 (S.D.N.Y. 2014) ....................................................................................15

*United States v. Vanoosterhout*,
  898 F. Supp. 25 (D.D.C. 1995),
  *aff'd*, 96 F.3d 1491 (D.C. Cir. 1996) .....................................................................................6

*United States v. Wells Fargo Bank, N.A.*,
  972 F. Supp. 2d 593 (S.D.N.Y. 2014) ..................................................................................11

*Williams v. Bank of N.Y. Mellon Trust Co.*,
  2015 WL 430290 (E.D.N.Y. 2015) ........................................................................................4

*Wisz ex rel. United States v. C/HCA Development*,
  31 F. Supp. 2d 1068 (N.D. Ill. 1998) .....................................................................................3

*Wood ex rel. United States v. Applied Research Assocs., Inc.*,
  2008 WL 2566728 (S.D.N.Y. 2008),
  *aff'd*, 328 Fed. App'x 744 (2d Cir. 2009) ..............................................................................8

**Statutes & Rules**

31 U.S.C. § 3730(a)(1)(G) ...........................................................................................................1

31 U.S.C. § 3730(c) ...............................................................................................................4, 14

31 U.S.C. § 3730(d)(1) and (2) ....................................................................................................4

31 U.S.C. § 3730(e)(4)(B) ...................................................................................................12, 13

Fed R. Civ. P. 9(b) ............................................................................................................ *passim*

Fed. R. Civ. P. 15(c)(1)(B) ..........................................................................................................5

**Other Authorities**

Boese, *Civil False Claims & Qui Tam Actions* (2014 Supp.) .......................................................3

**PRELIMINARY STATEMENT**

As demonstrated in Moody's opening brief ("Br."), the Amended Complaint in this matter – 120 pages of sprawling accusations about Moody's ratings followed by a cursory recitation of the various statutory grounds under the False Claims Act ("FCA") – fails to state a single viable or plausible FCA claim and is subject to dismissal on multiple grounds. The opposition brief ("Opp.") of relator Eric Kolchinsky ("Kolchinsky") fails to refute any of Moody's arguments; nor does it even clarify what Kolchinsky's claims are or under which particular FCA grounds he is asserting them.

Kolchinsky cannot, and does not, refute that most of the allegations in the Amended Complaint – including the claims relating to the FDIC premiums and the AIG bailout, and the allegedly false ratings practices that purportedly underlie them – simply did not appear in his original complaint and do not (and, by law, cannot) relate back. Accordingly, dismissal is compelled because: (1) the Amended Complaint was not filed in accordance with the applicable FCA filing and service provisions; and (2) all of the claims are time-barred. Moreover, all of the claims are subject to the public disclosure bar, which Kolchinsky has not overcome by demonstrating that he is an original source of the allegations in the complaint.

Kolchinsky has also failed to offer any serious response to Moody's showing that all of his strained and tenuous claims also fail on the merits, particularly given the requirements of Rule 9(b). With respect to the FDIC claims, Kolchinsky cannot, and does not, show that he has plausibly alleged that Moody's purportedly false ratings were made for the purpose of reducing premiums to the FDIC, or that Moody's ratings are material to those payments. Nor has he alleged which institutions, or which premium payments, were purportedly underpaid; indeed, the complaint does not plausibly allege facts suggesting that there were *any* such underpayments. Instead, as Kolchinsky effectively admits, the claim is based on sheer speculation.

With respect to his strikingly implausible AIG-related claims, Kolchinsky offers nothing at all to refute Moody's showing that he has failed not only to plead any false claims for payment to the government, but has also failed to plead any material false statements. Similarly, the other

1

scattershot, vague, and conclusory assertions in the Amended Complaint do not come close to stating actual claims under the FCA. For all these reasons, as discussed further below, and in Moody's opening brief, the Amended Complaint should be dismissed.

## ARGUMENT

### I. RELATOR HAS NOT DEMONSTRATED COMPLIANCE WITH THE FCA SEALING PROVISIONS

As discussed in Moody's opening brief, relator's initial complaint – the one actually filed under seal and reviewed by the government – was based primarily on the claim that Moody's false ratings of RMBS had caused Fannie Mae and Freddie Mac losses by purchasing those RMBS. When Moody's pre-motion letter pointed out that this did not allege a "false claim" under the FCA, Kolchinsky scrapped this theory altogether, and publicly filed an *entirely new complaint* alleging, *inter alia*, that Moody's failure to properly downgrade CDOs led to reduced FDIC premiums, and that its allegedly false statements about AIG caused the government to pay more in bailing AIG out. Kolchinsky makes no serious attempt to justify his assertion that the new complaint is "not substantially different" from the original. First, he addresses only the newly added reverse false claim allegations (i.e., the FDIC claims). Opp. 6. Second, as to those, he claims that only the "damages caused by Moody's false ratings" are new, not the allegations relating to the ratings themselves, but this is untrue: the allegations relating to the purportedly insufficient CDO and monoline downgrades were simply not in the original complaint.

Since the amended complaint is, for all intents and purposes, a completely new set of claims, Kolchinsky was required to comply with the sealing requirements in the FCA. Kolchinsky's argument that these requirements do not apply to an amended complaint, no matter how different, simply ignores the plain language of the statute, which applies to "the complaint" and is not limited to the initial filing. *See United States ex rel. Davis v. Prince*, 766 F. Supp. 2d 679, 684-85 (E.D. Va. 2011). Moreover, he fails to explain why the purposes behind the sealing requirements are any less implicated when a relator files completely new allegations in an amended complaint. As Kolchinsky does not deny, construing the statutory language not to

2

apply to amended complaints would offer relators an easy end-run around the requirements. While it is true some courts have held the provisions inapposite to amended complaints, those generally involve cases where the amended complaint was not substantially different from the original. *See, e.g.*, *United States ex rel. Mikes v. Straus*, 931 F. Supp. 248, 251-52 (S.D.N.Y. 1996).[1] In any case, it is not true that the "weight of authority" holds that new allegations do not need to be filed under seal, and the only court of appeals to address the issue affirmed the district court's holding that the sealing requirements do apply to a substantially different amended complaint. *See United States ex rel. Wilson v. Bristol-Myers Squibb, Inc.*, 750 F.3d 111, 120 (1st Cir. 2014) (affirming district court's conclusion that the proposed amended complaint "violated the FCA's filing and service requirements"); *see also* Boese, *Civil False Claims & Qui Tam Actions* § 4.04[B][1] (2014 Supp.) (courts holding sealing provisions inapposite to amended complaints "fail[] to consider the public interests asserted by Congress when the amended *qui tam* complaint raises new claims for relief or new and substantially different fraud allegations.").

Nor should this Court accept Kolchinsky's argument that the purposes of the FCA filing requirements were not compromised here. First, while his brief states that "the Government … was sent a copy of the amended complaint," Opp. 4, there is neither evidentiary support for this claim nor does the brief state *when* the complaint was sent, i.e., there is nothing to suggest that the government's ability to review these new allegations prior to filing was, in fact, preserved – though this would not by itself cure the violation. *See United States ex rel. Pilon. v. Martin*

---

[1] Of the cases relied upon by Kolchinsky, two do not even decide whether the sealing provisions apply to amended complaints. *See United States ex rel. Fisher v. Ocwen Loan Servicing, LLC*, 2015 WL 4039929, at *3-4 (E.D. Tex. 2015); *United States ex rel. Yannacopolous v. Gen. Dynamics*, 315 F. Supp. 2d 939, 952 (N.D. Ill. 2004). Two cases specifically noted that the amended complaint alleged the same fraudulent conduct as the original complaint. *See Wisz ex rel. United States v. C/HCA Development*, 31 F. Supp. 2d 1068, 1069 (N.D. Ill. 1998); *United States ex rel. Branch Consultants, LLC v. Allstate Ins. Co.*, 668 F. Supp. 2d 780, 803 (E.D. La. 2009). The statement in *United States ex rel. Saldivar v. Fresenius Med. Care Holdings, Inc.*, 972 F. Supp. 2d 1317, 1325 (N.D. Ga. 2013), that applying the sealing provisions to amended complaints was an "extreme minority position," ignored the decision in *United States ex rel. Wilson v. Bristol-Myers Squibb, Inc.*, 2011 WL 2462469 (D. Mass. 2011), and did not have the benefit of the other cases cited in Moody's opening brief (Br. 9).

*Marietta Corp.*, 60 F.3d 995, 999 (2d Cir. 1995).  In addition, the government was deprived of its ability to intervene as of right.[2]  And, by proceeding as he did, Kolchinsky assured himself of the greater percentage recovery available when the government does not exercise its initial right to intervene.  *See* 31 U.S.C. § 3730(d)(1) and (2).

In any case, Kolchinsky is incorrect in his suggestion that failure to follow the FCA requirements does not warrant dismissal absent a demonstration of prejudice (though such prejudice, as stated above, is present here).[3]  Courts of this circuit (including this one) have consistently dismissed complaints for failure to comply with the FCA sealing requirements, without requiring a demonstration that the Government was actually prejudiced thereby.  *See, e.g.*, *Williams v. Bank of N.Y. Mellon Trust Co.*, 2015 WL 430290, at *5 (E.D.N.Y. 2015); *Avile v. Feitell*, 2008 WL 2139153, at *2 (S.D.N.Y. 2008).  The FCA does not call for courts to engage in a balancing of interests as to whether the sealing requirements are valuable in a given case.  Congress has already made that determination, and relators must be held to those requirements.  *See United States ex rel. Summers v. LHC Group, Inc.*, 623 F.3d 287, 296-98 (6th Cir. 2010) (subjecting FCA violations to a balancing test would "represent a form of judicial overreach").

## II.  THE CLAIMS IN THE AMENDED COMPLAINT DO NOT RELATE BACK AND ARE TIME-BARRED

Kolchinsky's attempt to avoid the six-year FCA statute of limitations by arguing that his claims relate back to the original complaint is without merit.  First, despite his citation to courts in other circuits calling it an "outlier," the Second Circuit decision in *United States v. Baylor Univ. Med. Ctr.*, 469 F.3d 263 (2d Cir. 2006) is still the law in this circuit.  And while its holding

---

[2] The government retains the ability to intervene, but only upon a showing of good cause. *See* 31 U.S.C. § 3730(c)(3).  If this residual ability could cure the failure to follow the FCA procedures, then even failure to follow them with respect to initial complaints would be excused, contrary to the clear law in this circuit.

[3] Kolchinsky's argument that the procedural requirements are not "jurisdictional" is a red herring.  Defendants do not argue that they are jurisdictional, nor do they need to.  Failure to follow them, however, requires dismissal, regardless of whether they are "jurisdictional" or not. *See Pilon*, 60 F.3d at 999 n.4 (finding "no need to address" question of jurisdictional nature in dismissing claim with prejudice for failure to file under seal).

4

was made in the context of a government complaint in intervention, its rationale – that a complaint filed under seal cannot provide the notice necessary for relation back, *see id.* at 268-70 – is fully applicable to a relator's amended complaint, as at least one court in this circuit has held. *See Hayes v. Dep't of Educ.*, 20 F. Supp. 3d 438, 448-49 (S.D.N.Y. 2014) ("the Second Circuit said unambiguously in [*Baylor*] that Rule 15(c)(1)(B) relation back is simply unavailable in suits brought pursuant to § 3730(b)'s procedural requirements.").[4]

Moreover, even if relation back were theoretically available, it is of no help to Kolchinsky here. He makes no attempt to justify his conclusory, insupportable assertion that the AIG and FDIC allegations "arise from, and relate to, the same conduct pled in the original complaint." As demonstrated in Moody's opening papers, the allegations underlying these claims were simply not present in the original complaint. It is not enough that the allegations relate in some way to those in the original. *See Caldwell v. Berlind*, 543 Fed. App'x 37, 40 (2d Cir. 2013); *see also United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, 608 F.3d 871, 881-82 (1st Cir. 2010) (FCA claims as to contracts not previously pled did not relate back despite all involving contracts involved same alleged contract-fixing conspiracy).

Nor is it the case, as Kolchinsky claims, that these claims are timely even without relation back. Even assuming, *arguendo*, that the dictum in *United States ex rel. Kreindler v. United Tech Corp.*, 985 F.2d 1148 (2d Cir. 1993), that the FCA statute of limitations begins to run when "the claim is made, or, if the claim is paid, on the date of payment," *id.* at 1157, accurately states the law in this circuit, it has no application at all to the FDIC claims, which are *reverse* false claims (i.e., do not involve claims for payment from the government). The limitations period for reverse false claims runs from the date of the allegedly false statement. *See, e.g., United States ex rel. Schaengold v. Memorial Health, Inc.*, 2014 WL 7272598, at *21 (S.D. Ga. 2014); *United States v. Vanoosterhout*, 898 F. Supp. 25, 29 (D.D.C. 1995), *aff'd*, 96 F.3d 1491 (D.C. Cir.

---

[4] Kolchinsky argues this would unfairly blame the relator for the Government's length of time keeping the original complaint under seal, but this is not so: Kolchinsky could have amended his complaint at any time prior to the Government's decision to decline intervention.

1996). As Kolchinsky does not dispute, the latest false rating claimed to be have been made that is relevant to the FDIC claims is March 2009. *See* Am. Compl. ¶ 8; Br. 11.

As for the AIG claims, Kolchinsky does not dispute that any claim based on the November 2008 bailout accrued more than six years before filing the amended complaint. He argues only that the claim based on the government's agreement to give AIG an "upside" – i.e., a residual interest in any surplus in the Maiden Lane vehicles – did not accrue until that surplus materialized and the residual was actually paid out. But the claim asserted is not that Moody's made any false claim with respect to those payments; it is, rather, a supposedly false claim for the residual interest, i.e., the entitlement to some portion of any residual that might remain once all of the securities were sold. That interest was obtained by AIG, along with the additional bailout funds, in November 2008, and it is from that date that the limitations period clearly runs.

### III. THE FDIC CLAIMS ARE NOT STATED WITH PARTICULARITY AND DO NOT STATE A CLAIM

As Moody's explained in its opening brief, Br. 19, the pre-FERA version of a reverse false claim required that the allegedly false statement be made "to conceal, avoid, or decrease" an obligation to pay, and that courts had consistently interpreted this language as a requirement that the statement be made *for the purpose of* reducing an obligation to pay the federal government. Kolchinsky responds with completely inapposite cases either interpreting the *post*-FERA version of the statute or that stand only for the unexceptionable proposition that FCA's requirement that the false statement be made "knowingly" does not require an intent to defraud. Opp. 21. The "purpose" requirement, however, "'derives not from the term "knowingly," but rather from the infinitive phrase ["to conceal, avoid, or decrease" in § 3729(a)(7)].'" *United States ex rel. Bahrani v. ConAgra, Inc.*, 624 F.3d 1275, 1303 (10th Cir. 2010) (quoting *Allison Engine Co. v. United States ex rel. Sanders*, 553 U.S. 662, 671 n.2 (2008)).

There is simply no allegation of such "purpose" on the part of Moody's, and Kolchinsky makes no serious attempt to show otherwise or to show that he has stated a claim that is "plausible on its face." *Chen v. Major League Baseball Props., Inc.*, 798 F.3d 72, 76 (2d Cir.

6

2015).  Not only is the idea that Moody's knew its purportedly false ratings would reduce banks' FDIC premiums, and issued its ratings *for that purpose*, inherently implausible, but it is directly contradicted by the basic thrust of Kolchinsky's complaint (also implausible), which is that Moody's issued false ratings for the purpose of ingratiating itself to the *issuers* of securities (at the expense of investors such as the banks who held them).  *See, e.g.*, Am. Compl. ¶ 19; Opp. 3.

Kolchinsky's allegations also lack the specificity required by Rule 9(b).  He has pled that unspecified Moody's ratings of CDOs and monoline-wrapped municipal bonds were false, and that this led unspecified banks (out of thousands) to underpay their FDIC premiums.[5]  In other words, he provides no specifics as to either which statements (i.e., ratings) by Moody's were alleged to be false, nor which obligations to the government were thereby affected.[6]  Such a sweeping, vague claim plainly fails to meet the requirements of 9(b).

As Moody's noted in its opening brief, in the (non-reverse) false claim context, courts have held that Rule 9(b) requires a relator to do more than simply allege a fraudulent scheme and conclude that "false claims must have been submitted"; rather, the complaint must specify particular false statements and particular false claims.[7]  *See United States ex rel. Kester v.*

---

[5] Even if Kolchinsky were intending to confine his claims to the example institutions in the complaint, *see* Am. Compl. ¶ 275, he has pled no facts specific to those institutions that plausibly suggest that their FDIC premiums were reduced due to Moody's purportedly false ratings.  His pleading with respect to Citibank is, as stated in Moody's opening brief, improperly made on information and belief.  *Dominicus Americana Bohio v. Gulf & Western Indus., Inc.*, 473 F. Supp. 680 (S.D.N.Y. 1979), is not to the contrary; it simply states the rule that information-and-belief pleading may satisfy Rule 9(b) where facts are peculiarly within the defendants' knowledge.  Here, however, the alleged "facts" regarding banks' FDIC premiums are not plausibly claimed to be in Moody's knowledge at all.  *Cf. United States ex rel. Moore v. GlaxoSmithKline, LLC*, 2013 WL 6085125, at *3-6 (E.D.N.Y. 2013) (relaxation of Rule 9(b) not appropriate where, while defendant "may have had intimate knowledge of the alleged kickback scheme," it would not have known of the false claims submitted by third parties).

[6] Even if Kolchinsky had plausibly pled that all of the CDOs listed in the exhibits attached to his Amended Complaint were "false," i.e., did not represent Moody's actual rating opinion – and he has plainly not done so – his allegations do nothing to suggest that this relative handful of ratings would have made any difference in any bank's FDIC premiums.

[7] To be clear, Moody's is not suggesting that a "claim" for payment from the government is an element of a reverse false claim.  But if a (non-reverse) false claim requires specificity as to

*Novartis Pharms. Corp.*, 23 F. Supp. 3d 242, 253 (S.D.N.Y. 2014); *Moore*, 2013 WL 6085125, at *3-6.  By analogy, in the reverse context a plaintiff must plead not only the specific false statements made for the purpose of decreasing an obligation, but the obligations themselves; it cannot be sufficient to broadly allege a scheme and assume that some unspecified obligation somewhere must have been avoided or reduced.  And courts have held that Rule 9(b) requires specificity as to both the statement and the obligation avoided.[8]  *See Wood ex rel. United States v. Applied Research Assocs., Inc.*, 2008 WL 2566728, at *5 (S.D.N.Y. 2008) ("Plaintiffs cannot identify any existing financial obligation any of the defendants owed to the Government, nor can they identify any specific false record or statement that a defendant made to avoid such a purported obligation."), *aff'd*, 328 Fed. App'x 744, 748 (2d Cir. 2009); *Pencheng Si v. Laogai Research Found.*, 71 F. Supp. 3d 73, 96 (D.D.C. 2014) (dismissing reverse false claim where "[r]elator has failed to plead with sufficient specificity the particular monetary obligation that Defendants owed to the government").

      Finally, Kolchinsky does nothing to demonstrate that he has sufficiently pled that Moody's ratings were material to any bank's FDIC premium payments.  Contrary to his suggestion, Moody's in its brief cited the exact same standard for materiality as Kolchinsky applies.  But all Kolchinsky alleges in his complaint is that security ratings can be one of many inputs into an FDIC-insured bank's premium calculation.  He pleads no facts suggesting that the ratings he claims are false were significant enough inputs to have the potential to the affect any bank's premium.  To state but one shortcoming: If a particular institution held no Moody's-rated

---

the claim for payment *from* the government, it follows that reverse false claim requires specificity as to the obligation to pay *to* the government, and in neither case is it sufficient for the relator to simply plead that it must have occurred somewhere.

    [8] This requirement of specificity is particularly appropriate here where, unlike the typical reverse false claim, it is not an obligation of *Moody's* that is allegedly being avoided or reduced.  Where it is the defendants' own obligations that are allegedly being avoided, perhaps some lack of particularity may be excused on the theory that it is fairly clear (or the defendant must know) what obligations are at issue.  But, assuming for purposes of this motion that a reverse false claim may rest on a purportedly false statement material to a third-party's obligation to pay the government, a relator surely must at least identify the particular third parties at issue.

8

CDOs during the period which Kolchinsky says Moody's "slow-walked" downgrades, then Moody's ratings of those CDOs, no matter how purportedly false, could not be "material" to that bank's premium.  And presumably even if the bank had some CDOs, but these made up a relatively insignificant percentage of its assets, Moody's ratings still could not potentially affect the premium.  Yet Kolchinsky pleads *no* facts about any particular banks' holdings.[9]

## IV. THE AIG CLAIMS ARE INSUFFICIENT AND SUBJECT TO THE PUBLIC DISCLOSURE BAR

With regard to all but one of his AIG-related claims, Kolchinsky effectively concedes, by failing to respond to Moody's arguments, that they fail to state a claim.  First, with respect to the claim that Moody's threatened downgrades were inconsistent with its Joint Default Analysis, Kolchinsky does not deny that, as Moody's demonstrated, Br. 22-23, there was nothing in the JDA that precluded further downgrades and therefore nothing false about Moody's statements.  Moreover, it is absolutely clear that this claim is barred by the public disclosure bar.  Kolchinsky does not dispute that Moody's JDA was publicly disclosed, but asserts that the "JDA methodology is not an essential element – the fact that it was not followed is." Opp. 9.  But the terms of the JDA and its applicability to situations like AIG were publicly available for the world to read, and anyone could do so and conclude that it was or was not followed.  *See United States ex rel. Lissack v. Sakura Global Capital Markets, Inc.*, 2003 WL 21998968, at *10 (S.D.N.Y. 2003) (rejecting argument that "allegations of fraud" must be publicly disclosed, where elements from which alleged fraud can be inferred are public), *aff'd*, 377 F.3d 145 (2d Cir. 2004).  Kolchinsky's doing so puts him in no different position from the relator in *Kreindler*, who relied on publicly disclosed documents but whose "background knowledge enabled it to understand the significance" of that information.  *See Kreindler*, 985 F.2d at 1158-59 (dismissing claims under

---

[9] Similarly, if Moody's purportedly "false" rating differed from the "real" rating by only a small amount, that could be insufficient to make any difference in a bank's premium payment.  Or a particular bank could be so well-capitalized that the rating it assigned its CDO portfolio could be unimportant.  Kolchinsky, however, pleads no facts with respect to these and other issues.  Again, he simply takes the fact that Moody's ratings are one input into the process and assumes that the ratings he says were "false" must have been material to some bank, somewhere.

9

public disclosure bar); *United States ex rel. Rosner v. WB/Stellar IP Owner, LLC*, 739 F. Supp. 2d 396, 408 (S.D.N.Y. 2010) ("information that enables a relator to understand the significance of a publicly disclosed transaction or allegation" does not turn relator into an original source).

Nor does Kolchinsky have any response to Moody's demonstration of the inadequacy of his claim that Moody's false ratings of AIG led to its collapse and bailout by the Fed. Br. 20-21. His opposition fails to explain how it is plausible that faster and more severe downgrades of AIG and the CDOs on which it offered protection would have prevented the bailout. And more fundamentally, even if there were a plausible story along these lines, Kolchinsky still does not explain what the false claim is, i.e., in what sense did Moody's failure to downgrade faster represent a request or demand for payment from the government (or a statement material to one).

Thus, the only AIG-related claim the merits of which Kolchinsky even attempts to defend is the claim with respect to the residual interest (or "upside") that AIG was given in the Maiden Lane entities. Opp. 23-24. His brief does not cure the fundamental flaws in this claim. First, it is clear that whether he is alleging a claim under § 3730(a)(1)(A) or (B), Kolchinsky must allege a false claim. *See Kester*, 23 F. Supp. 2d at 252-53 ("submission of a false claim is the *sine qua non* of a False Claims Act violation"). Even if it were true that Moody's statement that the initial Maiden Lane proposal locked in losses at a greater level than Moody's expected was itself false, Kolchinsky must still allege the presentment of a false claim for payment to the government.

But he has not done so. The complaint alleges that the Federal Reserve agreed to let AIG have a residual interest in the Maiden Lane vehicles because Moody's stated that under the terms as originally proposed further downgrade of AIG was likely. This does not even amount to a "request or demand" by Moody's (or by AIG), *see* § 3730(a)(2), but even if it did there is no allegation that this was false, i.e., that AIG under the initial proposal would not have likely been further downgraded. To the contrary, the allegations in the complaint state that AIG's rating was already too high.[10] *See, e.g.* Am. Compl. ¶ 220 ("realistic evaluations of CDO expected losses

---

[10] Kolchinsky's cite to *United States ex rel. Feldman v. Van Gorp*, 697 F.3d 78 (2d Cir. 2012), is inapposite, as that case dealt with a specific issue regarding the measurement of

10

… were similar to *or greater* than the 50% losses AIG would 'lock in' through" Maiden Lane). In short, no false claim is alleged, and dismissal is appropriate.

Moreover, Kolchinsky fails to allege a materially false statement.  There is no plausible allegation that the alleged statement that the initial proposal "locked in losses" at a higher level than Moody's expected, even if false, would have been material to the Fed's decision. Kolchinsky's theory seems to be that if Moody's had been honest (in Kolchinsky's view) and stated that it was already overrating AIG and would therefore likely downgrade, then the Fed would have not increased its bailout support by way of the "upside".  This is simply incoherent, however.  The Fed would have only been concerned in maintaining AIG's rating and thus in what Moody's expected that rating to be under the proposed terms, but (to repeat) *that part of Moody's statement is not alleged to be false*.[11]  If anything, according to Kolchinsky's theory, a more "truthful" statement of Moody's opinion would have made the Fed even *more* motivated to increase the bailout support.  Kolchinsky cannot allege materiality in conclusory fashion; he must allege facts that render it *plausible*.  *Chen*, 798 F.3d at 76.  He has entirely failed to do so, and this claim, like the other AIG-related claims, should be dismissed on this ground as well.

V.     **ALL OF THE CLAIMS ARE BARRED BY THE PUBLIC DISCLOSURE BAR**

Aside from its application to the JDA-related allegations discussed above, the public disclosure bar serves to deprive this Court of jurisdiction over all of Kolchinsky's claims.  The

---

damages.  The "fraudulent inducement" theory provides only that where a government contract is initially procured by fraud, subsequent requests for payment under that contract may be considered false claims as well.  *See United States v. Wells Fargo Bank, N.A.*, 972 F. Supp. 2d 593, 623 (S.D.N.Y. 2014).  The relator still must plead a false claim, and it is on that point that the amended complaint fails.  Nor does the "implied certification" theory have any relevance to this case.  An "implied certification" claim is "based on the notion that the act of submitting a claim for reimbursement itself implies compliance with governing federal rules that are a precondition to payment." *Id.* at 622.  Moody's alleged statement to the Fed about AIG's expected losses was not a claim for payment, nor were there any government rules that served as a "precondition to payment" that Moody's could be said to impliedly certify compliance with.

[11] The allegation Kolchinsky cites, Am. Compl. ¶ 215, does nothing to support his claim. It states only that the credit rating agencies were concerned about losses being "crystallized at the bottom of the market."  There is no allegation that such a statement was false or fraudulent.

11

material elements of Kolchinsky's claims – that Moody's purportedly compromised its ratings to please issuers and that Moody's failed to downgrade securities in an appropriate fashion – have all been publicly disclosed, *see* Br. 14-15 & n.8, such that it is clear that his claims are "based *in any part* upon publicly disclosed allegations." *Kreindler*, 985 F.2d at 1158 (emphasis added).[12] Kolchinsky argues that his allegations regarding the "ratings marathon" and the monoline model substitution have not been publicly disclosed, but these are only details of the internal mechanism by which Moody's is alleged to have issued the purportedly false ratings. These details are similar to those in *United States ex rel. Kester v. Novartis Pharms. Corp.*, 43 F. Supp. 3d 332 (S.D.N.Y. 2014), where the relator's supplying of additional details about a pharmaceutical kickback scheme – e.g. the actual drugs involved, and the means by which it was carried out – did not avoid the public disclosure bar, since the "crux" of the claim, i.e., the "quid pro quo arrangement," had been publicly disclosed. *See id.* at 349-50.

Kolchinsky's submissions, moreover, do not establish that he has "direct and independent knowledge" of the allegations in his complaint, *see* 31 U.S.C. § 3730(e)(4)(B); *Rockwell Int'l. Corp. v. United States*, 549 U.S. 457, 470-72 (2007), and that this information comes from his direct effort and not from a third party, *see United States v. N.Y. Med. College*, 252 F.3d 118, 121 (2d Cir. 2001).[13] Kolchinsky's references to his own testimony do not reference the CDO or monoline downgrade issues he bases the Amended Complaint upon (as he concedes, *see* Opp. at 10 n.5). Nor does Kolchinsky submit evidence that he "voluntarily provided the information to the Government before filing" his FCA action. 31 U.S.C. § 3730(e)(4)(B). Kolchinsky has failed to carry his burden to demonstrate that jurisdiction is proper here.[14]

---

[12] This is particularly true to the extent Kolchinsky pleads a claim based on the supposed false certification by Moody's for NRSRO purposes, which (to the extent once can discern), rests on broad claims about Moody's integrity, not the specific CDO/monoline downgrade allegations.

[13] Because the events alleged in the Amended Complaint precede July 22, 2010, the amendments made by the Patient Protection and Affordable Care Act ("PPACA") do not apply.

[14] Kolchinsky relies on *Ping Chen ex rel. United States v. EMSL Analytical, Inc.*, 966 F. Supp. 2d 282 (S.D.N.Y. 2013), for the proposition that the public disclosure bar is no longer jurisdictional. Opp. 8. Moody's submits that the contrary analysis of Judge McMahon in *Kester*,

## VI.   THE REMAINDER OF THE COMPLAINT FAILS TO STATE A CLAIM

In its opening brief, Br. 16, Moody's pointed out that the complaint could be construed as attempting to assert claims arising out of the allegation that Moody's allegedly false ratings caused investor losses that the federal government had to repay, and that this did not state a claim because there was no allegation of a false claim for payment from the U.S. government. Kolchinsky proclaims this argument "undecipherable," Opp. 12, but any lack of clarity is primarily due to his own blunderbuss pleading that failed to lay out with any coherence what claims he is actually asserting. For the sake of clarity, however, this argument is not directed primarily at the FDIC and AIG claims (which are meritless for the reasons stated above), but rather at allegations such as ¶¶ 22-25 of the Amended Complaint. *See* Am. Compl. ¶ 25 ("Moody's conduct ... caused the United States to pay billions of dollars to cover investor losses…"). To the extent that Kolchinsky is actually asserting this as an FCA claim, it fails for the reasons stated in Moody's opening brief.

Kolchinsky's suggestion that a false claim is no longer required post-FERA is simply incorrect. First, except for the amendment to § 3730(a)(1)(B), which eliminated the intent requirement for false-statement claims, the FERA amendments apply only to conduct on or after May 20, 2009, *see* Pub. L. 111-21, § 4(f), and thus contrary to his suggestion (Opp. 14) the pre-FERA version of the FCA is applicable to most of the conduct in this case. But the more important point is, both pre- and post-FERA the essence of a claim under either § 3730(a)(1)(A) or (B) is a *false claim*, either to the federal government directly or to a federal contractor or grantee. *See* 31 U.S.C. § 3730(c). Claims that investors lost money due to purportedly false ratings do not satisfy this element – and Kolchinsky does not claim otherwise.

Kolchinsky argues in his brief that Moody's "does not address Relator's claim that it committed FCA violations based on its NRSRO application and annual certifications, all of

---

43 F. Supp. 3d at 344-46, is more persuasive, and notes that, as stated *supra* n.13, the PPACA amendments apply only from July 22, 2010 forward, after the events alleged by Kolchinsky. In any case, even under *Ping Chen*, it is Kolchinsky's responsibility to at least *plead* facts demonstrating jurisdiction, *see* 966 F. Supp. 2d at 299-301, and he has clearly not done so.

13

which were factually and legally false, and which were material to the Government's payment decision." Opp. 23; *see also id.* 22 (asserting NRSRO applications were "capable of influencing the government's payment decisions, and were integral to it").  It is true that Moody's did not address this, because there was no way to discern from the Amended Complaint that Kolchinsky was attempting to assert this as an FCA claim, and his brief does nothing to clarify how this could possibly be a claim.  Even assuming Moody's made false statements in its NRSRO applications or certifications – and not only does Moody's deny this, but the Amended Complaint does not plausibly allege facts that would support this conclusion – this still does not amount to the requisite false claim for payment from the federal government.  Put simply, *what* "Government[ ] payment decision" is he referring to?  His papers do not say, and the paragraphs of the Amended Complaint he cites shed absolutely no light on this question.

As for the claims that Moody's committed FCA violations by way of federal agency subscriptions to the Ratings Delivery Service, Kolchinsky asserts that Moody's did not address this claim.  Opp. 23.  This is untrue.  *See* Br. 19 n.10.  Even assuming that Kolchinsky may satisfy Rule 9(b) by simply assuming some federal agency somewhere must have subscribed to this service (and Moody's submits that this is not sufficient), Kolchinsky still does not explain what is false about Moody's representation that RDS represents the most current Moody's ratings (or attempt to explain how there is any other false claim made).

Kolchinsky's attempt to support his claim that Moody's caused "false" SEC Shelf Registrations fails.  Opp. 15-16.  In addition to the complete failure to specify any such false registration, as required by Rule 9(b), there is, as Moody's originally pointed out, no "false claim" for payment from the government alleged.  Kolchinsky rests his argument on the claim that Fannie Mae and Freddie Mac purchased RMBS based on these purportedly false shelf registrations (attempting to reassert the claim he had in the original complaint but discarded in the amended).  But as pointed out in Moody's original pre-motion letter, neither Fannie Mae nor

14

Freddie Mac is an agency of the federal government.  *See United States ex rel. Adams v. Wells Fargo Bank Nat'l Ass'n*, 2013 WL 6506732, at *8 (D. Nev. 2013).[15]

Kolchinsky's defense of his conspiracy pleading is meritless.  It is well-settled that Rule 9(b) applies to conspiracy claims under the FCA, because (like all FCA claims), they are allegations of fraud.  *See United States v. N.Y. Soc. for the Relief of the Ruptured & Crippled*, 2014 WL 3905742, at *25 (S.D.N.Y. 2014).  Kolchinsky's cite to two *nonfraud* conspiracy cases is irrelevant.  Kolchinsky also does not explain who, other than Moody's employees or affiliates, could be intended by its reference to entities "through which [Moody's] do[es] business."  In any case, the conspiracy claim fails for the same reason as the substantive claims.

## CONCLUSION

For the foregoing reasons, as well as the reasons stated in Moody's opening brief, Moody's respectfully requests that the Court dismiss the Amended Complaint in this action in its entirety with prejudice and without leave to replead.[16]

| | |
|---|---|
| October 23, 2015<br>New York, NY | SATTERLEE STEPHENS LLP<br><br>By:  /s/Glenn C. Edwards<br>James J. Coster<br>Joshua M. Rubins<br>Glenn C. Edwards<br>230 Park Avenue, Suite 1130<br>New York, NY 10169<br>(212) 818-9200 (tel); (212) 818-9606/7 (fax)<br>*Attorneys for Defendants* |

---

[15] Not only is there no false claim pled, there is no coherent set of allegations as to any false statement by Moody's that was material to, or caused the (nonexistent) false claim.  There are no allegations in Amended Complaint that Moody's RMBS ratings themselves were false (that was discarded when Kolchinsky completely rewrote his complaint).  Thus, the apparent logic is: Moody's purportedly false ratings of CDOs rendered its certifications of NRSRO compliance false, which rendered its claim to be an NRSRO false, which rendered the RMBS issuers' shelf registration statement certifying them as investment grade false, which was material to Fannie and Freddie's purchases.  This chain is far too attenuated to satisfy any reasonable interpretation of the causation or materiality elements of an FCA claim.

[16] Kolchinsky's request to replead should be denied for the reasons this Court stated at the initial conference in this matter.  *See* 6/5/15 Tr. (Dkt. # 33), at 10-11.