# SEEGERWEISS LLP

77 Water Street, New York, NY 10005    P 212.584.0700    F 212.584.0799    www.seegerweiss.com

April 20, 2016

**By ECF and Overnight Delivery**

The Honorable William H. Pauley III
United States District Judge
United States District Court for the
Southern District of New York
500 Pearl Street, New York, NY 10007

      Re:    *United States ex rel. Ilya Eric Kolchinsky v. Moody's Corp., et al.*,
             Civ. A. No. 12-cv-1399 (S.D.N.Y.)

Dear Judge Pauley:

      We write on behalf of the Relator, Ilya Eric Kolchinsky, in response to the March 25, 2016 letter from Defendants ("Defs.' Letter"), requesting a pre-motion conference to file a motion to dismiss Relator's Second Amended Complaint ("SAC"). On April 13, 2016, the Court set a pre-motion conference for May 12, 2016 at 10:30 a.m. Defendants' arguments in support of dismissal mischaracterize the amended allegations and misapprehend the applicable law.

      By Order dated February 4, 2016, the Court granted Defendants' motion to dismiss the complaint, but granted Relator leave to replead claims concerning Moody's Ratings Delivery Service ("RDS"). Relator filed the SAC on March 11, 2016. Defendants challenge the SAC on the ground that Relator "does little more than add an exhibit purporting to list every federal contract or contract modification (some 230 in all) to which MIS or its affiliates are a party." Defendants first contend that "[t]here is no attempt to articulate which of these contracts are related to any false claims." Defendants, however, ignore that the SAC, including its newly added Exhibit C ("Ex. C"), sets forth with particularity the factual content that supports a reasonable inference of the false claims.[1] As an initial matter, Defendants erroneously and selectively construe Ex. C in isolation from the rest of the SAC. The SAC and Ex. C specifically set forth allegations and information that identify false claims that relate to the RDS contracts and other products and services that Defendants sold to the Government that include or were based on false ratings. *See, e.g.*, ¶¶ 241-49, Ex. C.

      Defendants also argue that "many of these contracts do not involve the RDS." But (and particularly in the absence of discovery) Ex. C is not an all-inclusive list of the contracts for RDS

---

[1] "'This Court will accept all factual allegations in the complaint as true and draw all reasonable inferences in [plaintiff's] favor.' ... 'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.... For a claim to be plausible, the plaintiff must plead factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Boddie v. City of New York*, 2016 WL 1466555, at *2 (S.D.N.Y. Apr. 13, 2016) (citations and internal quotation marks omitted).

**New York**        **Newark**        **Philadelphia**

or other ratings-related products and services at issue, as such information rests within Defendants' control. Defendants ignore that, although Ex. C may list certain of such contracts that have been entered into after the "last date of any allegedly improper ratings practices" (Defs.' Letter at 2), there is a reasonable inference that they were based on ratings issued during the "improper ratings" period. *See* SAC ¶ 246; Ex. C, #34, #42, #43, #45, #48, #55, #63, #79, #147 (detailing ratings delivery service). Defendants' argument essentially is that Relator's allegations and Ex. C must set forth every valid RDS contract in order for the SAC to pass muster. That, however, is not the test under Rule 12(b)(6) or Rule 9(b), as authority cited by Defendants recognizes. *See* Defs.' Letter at 2 (citing *U.S. ex rel. Kester v. Novartis Pharm. Corp.*, 2015 WL 109934, at *23-24 (S.D.N.Y. Jan. 6, 2015) (representative samples satisfy 9(b)); *see also United States v. Wells Fargo Bank, N.A.*, 972 F. Supp. 2d 593, 616 (S.D.N.Y. 2013) (same).

Defendants contend that there are no adequate allegations of presentment of a false claim for payment or approval in the SAC (*i.e.*, a "demand for payment"). Defendants' argument is flawed for several reasons. First, Defendants overlook reasonable inferences in the SAC indicating that Defendants' contracts with the Government (set forth in SAC ¶¶ 241-49 & Ex. C) constitute allegations of specific false claims for payment from the Government. *See Wells Fargo Bank, N.A.*, 972 F. Supp. 2d at 623 ("courts have repeatedly held that the 'use of fraudulent information to induce the Government to provide a … contract 'constitutes a false claim under the FCA'"); *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 786 (4th Cir. 1999) (false certification of contract compliance can give rise to liability under FCA); *see also United States v. Veneziale*, 268 F.2d 504, 505 (3d Cir. 1959) (holding that liability may attach to party who fraudulently induces contract that results in government payment); *U.S. ex rel. Darrig, v. Med. Consultants Network, Inc.*, 303 F. App'x 429, 431 (9th Cir. 2008) ("Our cases have previously held that a claim for payment made to the federal government by a private party pursuant to a contract can be a false claim if the private party failed to satisfy its contractual obligations.") (citation omitted). Defendants' argument that there are no allegations of when such a demand was made is meritless, as Ex. C sets forth specific dates of contracts with Government agencies and the specific values. Defendants' suggestion that the Government did not make any payments on these contracts, or that it is unable to determine when a false claim was made or paid (particularly given that these contracts are in its possession) is disingenuous.

Second, Defendants ignore reasonable inferences demonstrating that their false claims were factually or legally false. SAC ¶¶4-18, 72-152, 244-48. A claim is "factually false" if it includes "an incorrect description of goods or services provided." *Mikes v. Straus*, 274 F.3d 687, 697 (2d Cir. 2001). Defendants' false ratings are statements material to their false claims, pursuant to their RDS contracts and contracts for other ratings-related products and services, plainly satisfy this standard. Moreover, a claim may be "legally false" either expressly or implicitly. Express legal falsity occurs where the defendant "falsely certifies compliance with a particular statute, regulation or contractual term, where compliance is a prerequisite to payment." *Id.* at 698. Defendants' false NRSRO certifications clearly meet this standard. SAC ¶¶2-7, 13-15, 226-40. Additionally, Defendants ignore that implied legal falsity is "based on the notion that the act of submitting a claim for reimbursement itself implies compliance with governing federal rules that are a precondition to payment," *Mikes*, 274 F.3d at 699—a test that is also satisfied here through the RDS and other contracts.

2

The Honorable William H. Pauley III
April 20, 2016
Page 3

      Without citation to any source in the SAC, Defendants also makes the novel characterization that Relator's SAC "rests on the theory that allegedly wrong *ratings* are the false claims." But Relator nowhere alleges this. Also, Defendants' argument ignores that the standard under the FCA includes (1) *causing* the presentment of a false claim for payment or approval (a standard that Relator has amply satisfied by alleging that Defendants caused the presentment of false claims with it false ratings and that Defendants itself presented false claims through its RDS and other contracts); and (2) causing the use of false statements material to a false claim.

      Defendants' interpretation of the standard for assessing "materiality" in the false claims context is likewise misconstrued. They contend that the SAC does not explain why the Government would choose not to purchase RDS if it knew that Defendants' ratings were incorrect. The term "material to," however, is broadly and objectively defined to mean "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4). Contrary to Defendants' self-serving and subjective test for determining materiality, the SAC's allegations support the reasonable inference that Defendants made, used, or caused the making or use of false statements (*i.e.*, false ratings) that had "the potential to influence the government's decisions" in purchasing the RDS and other contracts. *U.S. ex rel. Longhi v. United States*, 575 F.3d 458, 470 (5th Cir. 2009); *see also* SAC ¶¶248-49.[2]

      Finally, Defendants misleadingly argue that the SAC "fails to allege with particularity any false ratings after May 27, 2009." (Defs.' Letter at 2.) The FCA's six-year statute of limitations begins to run not on the date the false rating is created or exists but on the date the claim is made, or, if the claim is paid, on the date of payment. *See United States ex rel. Kolchinsky v. Moody's Corp.*, No. 12CV1399, 2016 WL 551679, at *7 (S.D.N.Y. Feb. 4, 2016); *see also id.* at *8 (referring to RDS "Claims"); 31 U.S.C. §§ 3729(a)(1)(A), (B). Even though some false ratings (*i.e.*, false statements material to a false claim) were first published prior to May 27, 2009, the SAC sets forth reasonable inferences that false claims, or the payment of false claims, occurred after May 27, 2009, and were based on false ratings that were in existence during the 2007-09 financial crisis. *See, e.g.,* SAC ¶ 246; Ex. C, #34, 42, 43, 45, 48, 55, 63, 79, 147. Additionally, as alleged in the SAC, "Moody's false statements were material when first made and continue to be material to the present day as Moody's ratings-related products include historical data." SAC ¶ 248.

      Respectfully submitted,

      Stephen A. Weiss

cc:    Joshua M. Rubins, Esq. (by ECF and e-mail)
        James J. Coster, Esq. (by ECF and e-mail)
        Glenn C. Edwards, Esq. (by ECF and e-mail)

---

[2] The materiality inquiry is objective; it "focuses on the potential effect of the false statement when it is made rather than on the false statement's actual effect after it is discovered." *See U.S. ex rel. Feldman v. Van Gorp*, 2010 WL 5094402, at *2 (S.D.N.Y. Dec. 9, 2010). For this reason, actions that government officials take upon learning of a false statement cannot render the statement immaterial. *See U.S. ex rel. Anti-Discrimination Ctr. of Metro New York, Inc. v. Westchester Cnty., N.Y.*, 668 F. Supp. 2d 548, 569-70 (S.D.N.Y. 2009).