UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA, *ex rel.* ILYA ERIC
KOLCHINSKY,

                       Plaintiff,

       -against-

MOODY'S CORPORATION, MOODY'S
INVESTORS SERVICE, INC., and JOHN DOES #1-
100,

                   Defendants.

No. 12 Civ. 1399 (WHP)

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO DISMISS
THE SECOND AMENDED COMPLAINT**

SATTERLEE STEPHENS LLP

James J. Coster
Joshua M. Rubins
Glenn C. Edwards
James I. Doty

230 Park Avenue, Suite 1130
New York, NY 10169
(212) 818-9200
(212) 818-9606/7 (fax)
*Attorneys for Defendants*

## <u>**TABLE OF CONTENTS**</u>

Table of Authorities ............................................................................................................. ii

Preliminary Statement .......................................................................................................... 1

Background ........................................................................................................................... 3

Argument .............................................................................................................................. 4

       I.      Legal Standard .................................................................................................. 4

      II.     The Complaint Must be Dismissed For Failure to Satisfy Rule 9(b) ..................... 5

     III.    The Complaint Must Be Dismissed For Failure to Plead That Any Alleged Claims Were False .......................................................................... 9

Conclusion .......................................................................................................................... 12

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)...................................................................................................4

*Bishop v. Wells Fargo & Co.,*
    --- F.3d ---, 2016 WL 2587426 (2d Cir. May 5, 2016)................................... *passim*

*Gold v. Morrison-Knudsen Co.,*
    68 F.3d 1475 (2d Cir. 1995)..................................................................................4, 5

*Mikes v. Straus,*
    274 F.3d 687 (2d Cir. 2001)........................................................................ *passim*

*Rombach v. Chang,*
    355 F.3d 164 (2d Cir. 2004)). ...............................................................................5

*United States ex rel. Absher v. Momence Meadows Nursing Ctr., Inc.,*
    764 F.3d 699 (7th Cir. 2014) ...............................................................................11

*United States ex rel. Kester v. Novartis Pharms. Corp.,*
    23 F. Supp. 3d 242 (S.D.N.Y. 2011).................................................................5, 6

*United States ex rel. Kirk v. Schindler Elevator Corp.,*
    601 F.3d 94 (2d Cir. 2010), *rev'd on other grounds*, 563 U.S. 401 (2011)...........................5

*United States ex rel. Kirk v. Schindler Elevator Corp.,*
    130 F. Supp. 3d 866 (S.D.N.Y. 2015).................................................................11

*United States ex rel. Ladas v. Exelis, Inc.,*
    --- F.3d ---, 2016 WL 3003674 (2d Cir. May 25, 2016)................................. *passim*

*United States ex rel. McGee v. IBM Corp.,*
    81 F. Supp. 3d 643 (N.D. Ill. 2015) .....................................................................12

*United States ex rel. Swan v. Covenant Care, Inc.,*
    279 F. Supp. 2d 1212 (E.D. Cal. 2002)................................................................12

*United States v. Dialysis Clinic, Inc.,*
    No. 09 Civ. 710, 2011 WL 167246 (N.D.N.Y. Jan. 19, 2011) ..............................12

**Statutes**

False Claims Act, 31 U.S.C. §§ 3729-32............................................................. *passim*

**Other Authorities**

Fed. R. Civ. P. 9(b) ............................................................................................ *passim*

Fed. R. Civ. P. 12(b)(6)........................................................................................1, 4

Defendants Moody's Corporation ("MCO") and Moody's Investors Service, Inc. ("MIS," and together with MCO, "Moody's") respectfully submit this memorandum of law in support of their motion to dismiss the Second Amended Complaint (the "Complaint" or "SAC") of relator Ilya Eric Kolchinsky, with prejudice, under Federal Rules of Civil Procedure 12(b)(6) and 9(b).

## PRELIMINARY STATEMENT

This is Kolchinsky's third attempt to plead a viable claim against Moody's under the False Claims Act (the "FCA"). Kolchinsky's First Amended Complaint ("FAC"), which this Court compared to the Homeric catalogue of ships in its breadth and sprawl, was largely dismissed with prejudice in a prior opinion. Only one narrow claim was not dismissed outright: Kolchinsky's assertion that the government's purchase of Moody's Ratings Delivery Service ("RDS") gives rise to potential liability under the Act. Because the prior complaint contained no details whatsoever to support this assertion, the Court dismissed the RDS-related claims without prejudice and permitted Kolchinsky to file a "substantially narrowed" second amended complaint limited to the RDS claims – excluding claims arising before May 27, 2009 – in attempted conformity with Rule 9(b).

Even a brief perusal confirms that there is nothing "narrowed" about Kolchinsky's second amended complaint (the "Complaint"). As this Court noted, the Complaint is "still a catalog of ships." 5/12/16 Pre-Motion Conference Tr. at 6:19. After hundreds of paragraphs, many of them plainly relevant only to dismissed claims, the Complaint first mentions Moody's RDS on page 90. The Complaint is quite obviously not a serious effort to narrow the claims before the Court, but instead a desperate attempt to shoehorn now-irrelevant allegations into what should be a narrow and circumscribed claim.

For all its verbosity, the Complaint adds exceedingly little to the RDS-related allegations in the FAC. In large part, the new allegations consist of an exhibit that purports to list every contract between Moody's (or any affiliate) and any governmental agency, for any service, between 2007 and today. The connection between these approximately 230 contracts and the

1

preceding 100-page-plus Complaint is entirely unexplained.  Many of the contracts do not appear to relate to RDS services, and the large majority of the contracts post-date all of the misconduct alleged by Kolchinsky.  In short, the only thing Kolchinsky has done to supplement his deficient allegations is procure, from a public website, a list of government contracts, the bulk of them patently immaterial to the ostensible substance of his claims.  As explained below, this attempt to cure his prior deficient pleading is unavailing.

As an initial matter, Kolchinsky's claims fail to satisfy fundamental pleading standards of Rule 9(b).  Among other pleading deficiencies, the Complaint fails to allege with the requisite particularity that (1) Moody's made particular claims that (2) were false.  The Complaint lists several hundred contracts, but Rule 9(b) requires a list, or at least a general description, of *claims* -- for example, claims between particular dates, paid by particular agencies, related to certain ratings.  Rule 9(b) also requires Kolchinsky to articulate a theory as to why any claims made by Moody's were *false* within the meaning of the FCA.  Instead, the Complaint throws together hundreds of disparate, incoherent allegations with no clear connection to Kolchinsky's claims and expects this Court to construct a viable cause of action from the pieces.  This effort fails to satisfy the most basic pleading requirements.

Even if Kolchinsky had attempted to plead a specific theory as to falsity (and he has not), dismissal would still be required.  Recent Second Circuit case law, including *Bishop v. Wells Fargo & Co.*, --- F.3d ---, 2016 WL 2587426 (2d Cir. May 5, 2016), confirms that there is simply no colorable theory of falsity based on the facts alleged in the Complaint.  Any theory as to legal falsity fails given the absence of allegations that Moody's wrongfully certified compliance with any *express* contractual, statutory, or regulatory precondition to payment.  And any theory of factual falsity is defective given that, by Kolchinsky's own admission, the government received the RDS for which it contracted.  Kolchinsky appears to argue that the government might have avoided contracting with Moody's, or might have paid less under its contracts, had it known of Moody's alleged misconduct, but this is rank speculation and in any

2

event insufficient to allege legal or factual falsity under *Bishop* and other Second Circuit cases. In sum, Kolchinsky's protean, ever-shifting allegations remain defective as a matter of law, and the Complaint should be dismissed with prejudice.

## BACKGROUND

As Moody's explained in its previous motion to dismiss, Kolchinsky is a former Managing Director at Moody's who, following his termination, has made numerous attempts to extract payment from Moody's for what he claims were improper rating practices. *See, e.g.*, Defs.' Mem. of Law in Supp. of Their Mot. to Dismiss 4-5, July 31, 2015, ECF No. 39.

Kolchinsky's previous complaint alleged a host of FCA violations unconnected with any claim for payment from the government. *See, e.g.*, Mem. and Order 1-2, 10-12, Feb. 4, 2016, ECF No. 53 ("*Kolchinsky*"). The Court granted Moody's motion to dismiss the complaint for failure to state a claim and on statute of limitations grounds. *Id.* at 10-13, 17.

In dismissing the prior complaint, the Court granted leave to replead only those claims relating to the government's purchase of the RDS, an electronic delivery system for Moody's publicly available ratings. The Court further noted that Kolchinsky's RDS-related claims arising before May 27, 2009 were time-barred. *Id.* at 13, 17. Finally, the Court ordered that any proposed (second) amended complaint was required to plead RDS-related claims with particularity. *Id.* at 13 ("Rule 8 pleading is not sufficient.").

Notwithstanding the Court's directive, the newly filed Complaint is 101 pages, consisting largely of allegations copied from the prior complaint. Thus, for example, the Complaint contains dozens of paragraphs regarding Moody's NRSRO certifications and ratings of AIG, despite the dismissal of these claims in the Court's prior opinion. *See Kolchinsky*, at 10-12, 16-17. The Complaint also retains a claim alleging that Moody's improperly avoided an obligation to *pay* the government, even though such a contention has no apparent relationship to Plaintiff's RDS allegations. *See* Compl. ¶¶ 275-279. The bulk of the Complaint continues to be devoted to alleged misdeeds occurring before the limitations period: the alleged failure to sufficiently

3

downgrade ABS CDOs from October 2007 to December 2008, and the alleged misrating of AIG and insurance companies from December 2007 to March 2009.  *See id*. ¶ 8.  The Complaint also asserts generally that Moody's downgrades of TruPS CDOs in 2008 and 2009 were too slow, but the Complaint makes no allegations regarding Moody's TruPS ratings models, methodologies, or rating processes, or the Moody's employees involved in rating and monitoring TruPS CDOs. *See id*. ¶¶ 144-152.

With respect to the RDS contracts themselves, the Complaint says virtually nothing. Paragraphs 245-249 and Exhibit C to the Complaint are the only relevant new additions, the latter listing without discrimination hundreds of contracts between multiple federal agencies and Moody's or its affiliates, regardless of the subject matter of the agreement.  *See* Compl. ¶¶ 241-249, Ex. C.  Exhibit C includes many alleged contracts from before the statute of limitations bar and more than one hundred contracts that, by Kolchinsky's own allegations, post-date *all* of the misconduct alleged in the Complaint.  <u>The Complaint lacks even a cursory allegation that any</u> <u>particular contract has any connection to any of the substantive allegations of wrongdoing in the</u> <u>Complaint.</u>

## <u>ARGUMENT</u>

## I.  LEGAL STANDARD

A complaint cannot survive a motion to dismiss under Rule 12(b)(6) unless it includes "factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  Because Rule 9(b) applies to claims under the FCA, a well-pleaded complaint must "'state with particularity the specific statements or conduct giving rise to the fraud claim.'" *Bishop*, 2016 WL 2587426, at *5 (quoting *Gold v. Morrison-Knudsen Co.*, 68 F.3d 1475, 1477 (2d Cir. 1995)).  More specifically, the plaintiff's allegations must "'(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the

statements were made, and (4) explain why the statements were fraudulent.'" *Id.* (quoting *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004)).

The FCA "attaches liability, not to the underlying fraudulent activity or to the government's wrongful payment, but to the claim for payment." *See United States ex rel. Kester v. Novartis Pharms. Corp.*, 23 F. Supp. 3d 242, 253 (S.D.N.Y. 2011) (internal quotation marks omitted). "Thus, the submission of a false claim is the *sine qua non* of a False Claims Act violation." *Id.* (internal quotation marks omitted). This is true under both 31 U.S.C. § 3729(a)(1)(A) (presentation of a false claim) and § 3729(a)(1)(B) (false statement material to a false claim). *Id.* at 252. To plead adequately a claim under the FCA, a plaintiff must allege with particularity both (1) the specific claims at issue and (2) that such claims were "false" within the meaning of the FCA. *Id.* at 252. The FCA requires a "high degree of particularity" in pleadings. *Id.* at 257-58.

In order adequately to allege falsity, an FCA claim must allege either legal falsity or factual falsity. Legal falsity involves an express or implicit certification of compliance "with a particular statute, regulation or contractual term, *where compliance is a prerequisite to payment*." *See, e.g., United States ex rel. Ladas v. Exelis, Inc.*, --- F.3d ---, 2016 WL 3003674, at *7 (2d Cir. May 25, 2016) (emphasis in original) (internal quotation marks omitted). A claim is factually false when "the contractor bills for something it did not provide." *United States ex rel. Kirk v. Schindler Elevator Corp.*, 601 F.3d 94, 114 (2d Cir. 2010), *rev'd on other grounds*, 563 U.S. 401 (2011).

## II.  THE COMPLAINT MUST BE DISMISSED FOR FAILURE TO SATISFY RULE 9(B)

Here, Kolchinsky has failed to plead with the requisite high degree of particularity that Moody's (1) made a claim, and (2) that the claim was false. These and other pleading defects discussed below require dismissal of Kolchinsky's Complaint.

As an initial matter, the Complaint, even after amendment, still fails to identify with particularity the claims that are at issue in the action. Exhibit C simply points to every single

contract between any government agency and Moody's during an 8-year period, but this laundry list does not satisfy Kolchinsky's pleading obligations. The overwhelming number of contracts cited are facially irrelevant to this action: many pre-date the statute of limitations cutoff date (*see, e.g.*, Ex. C at 22), the vast majority of the remaining contracts post-date by several years Moody's alleged misconduct (*see, e.g.*, *id.* at 1), and many of the contracts appear to have little if anything to do with RDS. Moreover, and even more critically, contracts are not "claims" under the FCA, and the Complaint does nothing whatsoever to identify false claims (*i.e.*, requests for payment) made under any relevant contracts. *See Kester*, 23 F. Supp. 3d at 257-58 ("[P]laintiffs asserting . . . [FCA] claims must plead the submission of a false claim with a high enough degree of particularity that defendants can reasonably 'identify particular false claims for payment that were submitted to the government.'") (citation omitted). Although Kolchinsky is not obliged to identify, for example, particular invoice numbers submitted by Moody's or paid by the government, the FCA requires at a minimum that he articulate a coherent theory or general description of the claims at issue to give fair notice to Moody's of the payments that he seeks to put at issue in this action. Plaintiff's suggestion that there must be a relevant claim somewhere in the bundle of extraneous contracts cited is the precise type of generalized, non-specific allegation held defective under Rule 9(b). *See id.* at 253 ("[A] plaintiff 'cannot circumscribe the Rule 9(b) pleading requirements by alleging a fraudulent scheme in detail and concluding, that as a result of the fraudulent scheme, false claims must have been submitted.'") (citation omitted).

The second central pleading defect is Kolchinsky's failure to plead any theory as to why any claims made by Moody's were allegedly false. Contrary to Plaintiff's apparent belief, the FCA requires more than simply pointing to free-floating, allegedly inaccurate statements made by Moody's. Instead, the plaintiff must present a theory as to why the *claims* – not just Moody's alleged statements – were "false." *See, e.g.*, *id.* at 260 (holding that sufficiency of complaint under Rule 9(b) required analysis of the plaintiff's proposed theory of falsity). Here, the Court will search in vain for any coherent theory of falsity espoused anywhere in the Complaint.

Plaintiff has simply thrown together hundreds of allegations of questionable relevance and asked this Court to divine possible theories of claim falsity.  The absurdity of this endeavor was highlighted at the pre-motion conference, where plaintiff's counsel articulated three wildly divergent views of falsity as to Moody's NRSRO certifications in the span of roughly two minutes.  *Compare* Tr. at 7:13-14 ("We are not relying specifically on false statements in connection with the NRSRO certification.") *with id.* at 8:1-2 ("In our [NR]SRO compliance argument, it involves a factually false claim issue."); *with id.* at 9:9-11 ("I'd just like to address the NRSRO issue because I think it does go to both legal falsity and factual falsity.").  The apparent difficulty of plaintiff's counsel is a direct result of a Complaint that assiduously avoids clearly explaining why any claims at issue were false (presumably to avoid numerous legal barriers, *see infra* Part III).  This defect, which is exacerbated by Plaintiff's failure to explain what claims are at issue, requires dismissal under Rule 9(b).  *See, e.g.*, *Ladas v. Exelis, Inc.*, --- F.3d ---, 2016 WL 3003674, at *9 (2d Cir. May 25, 2016) (affirming dismissal for failure to include "plausible allegations of fact that showed, required for FCA purposes, that any claim for payment submitted by . . . [defendants] was false . . . .").

　　　　The Complaint's pleading defects are particularly notable with respect to the allegation that certain of Moody's ratings were false.  If, as Kolchinsky now contends, the ratings are not the false claims on which he sues (*see* Pl.'s Pre-Motion Letter at 3 (Dkt. 59) (Apr. 20, 2016)), what is the relationship between the allegedly "wrong" ratings and the purportedly false claims? The Complaint never explains.  Nor does the Complaint contain anything but the most conclusory allegation that any allegedly "wrong" ratings were material to the government's payment decisions (*see* Compl. ¶¶ 248-249).  Although the Complaint makes the naked assertion that the government would have cared about, *inter alia*, alleged inaccuracies in Moody's TruPS ratings, it does not plausibly explain why inaccuracies in this minuscule subset of ratings would have influenced the decision to purchase the RDS even among those (unspecified) federal agencies that might have had such an interest – and the illogical suggestion that, for example, the

Federal Energy Regulatory Commission (*see, e.g.,* Ex. C, No. 25) would have the slightest interest in such ratings is entirely unexplained.

Finally, even if any "wrong" ratings were connected to a well-pleaded false claim (which they are not), the Complaint fails to allege with particularity *any* false ratings in the limitations period. According to the explicit allegations in the Complaint, Moody's alleged errors in rating ABS CDOs and insurance companies were all corrected *before* the May 2009 limitations date. *See supra* p. 4. With respect to TruPS CDOs, the Complaint makes only the conclusory allegation, unsupported by the kind of factual allegation required by Rule 9(b), that certain CDOs should have been downgraded sooner. Only one specific example is discussed, Alesco IX, and that rating was similarly downgraded before May 2009, according to the Complaint. *See* Compl. ¶ 151. Despite hundreds of paragraphs of allegations, then, it is clear that Kolchinsky has not adequately alleged that Moody's rated any specific securities "incorrectly" during the relevant time period.

The multiple pleading deficiencies identified above are fundamental and bear directly on the "salutary purposes of Rule 9(b)," which are "rigorously enforced" in the Second Circuit, as the Court noted just last week in dismissing FCA claims. *See Ladas*, 2016 WL 3003674, at *7. In addition to providing notice to the defendant of a plaintiff's claims, *see id.*, the specificity requirement of Rule 9(b) facilitates targeted discovery tailored to the specific misconduct alleged in the Complaint. Here, in contrast, it is difficult to see how Moody's can intelligently respond to, the parties could even begin to reasonably litigate, or this Court could effectively manage discovery of the plaintiff's Complaint as currently pled. Presumably, for example, Kolchinsky is not entitled to conduct discovery on more than 400,000 insurance ratings, *see* Compl. ¶ 10 (or, even limiting the claims to TruPS CDOs, the conclusorily asserted falsity of 300 different CDOs, *see id.*), yet there is no guidance from the Complaint as to which ratings (if any) are relevant or how the Court would even determine this. Likewise for the more than 20 different governmental counterparties and 240 different contractual actions over a nearly 10-year period listed in Exhibit

C.  The Complaint threatens the parties and the Court with the prospect of utterly unworkable discovery into not only the events underlying the financial crisis (*see Kolchinsky* at 2) but the entire federal government's use of the RDS and other "ratings-related products and services" (Compl. ¶ 248).  Fortunately, Rule 9(b) prevents the parties and the Court from having to embark on such an Odyssean quest.  Accordingly, the Court should dismiss Plaintiff's Complaint for failure to plead any FCA claim with the requisite particularity.

## III.  THE COMPLAINT MUST BE DISMISSED FOR FAILURE TO PLEAD THAT ANY ALLEGED CLAIMS WERE FALSE.

As noted above, the Complaint fails to offer any coherent theory as to how any claim made by Moody's to the federal government was false.  The reason for the Complaint's evasiveness is not difficult to discern:  as recent Second Circuit cases makes clear, and as explained further below, the facts alleged by Kolchinsky fail as a matter of law to plead any type of falsity recognized under the FCA.

**Legal Falsity**:  The central premise of legal falsity is that, in submitting a claim for payment, the defendant explicitly or implicitly certified compliance with a statute, regulation, or contractual term that is a precondition for payment by the government.  *Bishop*, 2016 WL 2587426, at *10; *Mikes v. Straus*, 274 F.3d 687, 698-99 (2d Cir. 2001); *Ladas*, 2016 WL 3003674, at *7-9.  Here, in several hundred paragraphs, Kolchinsky has not alleged, even in cursory fashion, that Moody's violated any express legal precondition to payment for RDS.  This alone defeats any attempt to establish legal falsity.

This principle was clearly articulated by the Second Circuit in *Bishop*, where the relator alleged in great detail that the defendant, a federal banking institution, committed a "massive fraud" that deceived the federal government into providing the bank access to the Federal Reserve discount window.   2016 WL 2587426, at *3-4.  According to the relator, the bank received a loan by falsely certifying compliance with "laws and regulations," while committing rampant legal violations and providing false information to the Federal Reserve regarding its

financial condition. *See id.* at *4-5.  The Second Circuit, stressing that "the FCA was not intended to police general regulatory noncompliance," *id.* at *7, held that the relator's claims were defective for failure to identify a specific statutory, contractual, or regulatory provision, violation of which would have rendered the bank ineligible to access the discount window.  *See id.* at *8-11.

The threshold question under *Bishop* is therefore whether Kolchinsky has alleged that Moody's was ineligible to receive payment from the government under the Exhibit C contracts because it violated some express legal precondition.  *See also Ladas*, 2016 WL 3003674, at *7. (under the FCA, a defendant "is liable when it submits a claim for reimbursement while knowing . . . that *payment expressly is precluded* because of some noncompliance by the defendant") (emphasis added and internal quotation marks and alterations omitted).  Here, the answer is plainly no.  Although the Complaint purports to identify several of Moody's legal obligations, such as its NRSRO and SEC reporting requirements, there is no allegation that any explicit rule requires Moody's compliance with those obligations as a prerequisite to payment for any services.  This forecloses Kolchinsky's claim under *Bishop.*  2016 WL 2587426, at *10; *see also Mikes*, 274 F.3d at 700-01 ("[P]laintiff's allegations cannot establish liability under the False Claims Act because . . . the Medicare statute does not explicitly condition payment upon compliance with § 1320c–5(a)," a provision that sets forth obligations of a Medicare participant.).  Although Kolchinsky contends that the government would have been "reluctant" to contract with Moody's had it known of Moody's alleged non-compliance with the legal obligations referenced in the Complaint (*see* Compl. ¶ 249), this theory of legal falsity was flatly rejected by the Second Circuit in *Bishop*.  *See* 2016 WL 2587426, at *3 (dismissing relator's argument that defendant's violation of provision that went to the "heart of the bargain" with the government stated a claim for legal falsity).  Under *Bishop*, even the existence of an alleged "massive fraud" by the defendant related to the subject matter of the contract is irrelevant absent

10

an express precondition to payment violated by the defendant, which Kolchinsky fails to identify. *Bishop*, 2016 WL 2587426, at *7; *see also Mikes*, 274 F.3d at 698.

**<u>Factual Falsity</u>:**  A factually false claim is one where the defendant bills the government for services that were not provided – "as when a contractor delivers a box of sawdust to the military but bills for a shipment of guns." *Bishop*, 2016 WL 2587426, at *6; *see also Mikes*, 274 F.3d at 697.  Here, the government allegedly contracted for various services, including the RDS – *i.e.*, electronic access to the rating of all securities rated by Moody's, as well as other "critical data, such as CUSIP, coupon date, maturity date, date of last action, and whether a security has been placed" on review for possible ratings action by Moody's.  Compl. ¶ 242.  Nothing in the Complaint suggests that the government did not receive these services or was in any way displeased with their performance.  To the contrary, the Complaint maintains that the government continues to this day to enter into new contracts with Moody's.  *See, e.g.*, Ex. C, No. 16 (alleged Jan. 23, 2016 contract between Moody's and the Department of the Treasury).  The Complaint, in other words, does not even attempt to allege that Moody's billed the government for services that were simply not provided, and thus the Complaint fails to allege factual falsity. *See, e.g.*, *United States ex rel. Kirk v. Schindler Elevator Corp.*, 130 F. Supp. 3d 866, 874 (S.D.N.Y. 2015) (noting factual falsity was not at issue where "[n]o party contend[ed] that [the defendant] did not provide the government with the [] services it contracted for").

Kolchinsky will likely argue that the Complaint sufficiently alleges, for some unidentified portion of the Exhibit C agreements, that the contracted-for services were worth less than the government paid because of one or more of the "wrong" ratings alleged in the Complaint.  This argument abjectly fails 9(b) scrutiny given the Complaint's scant allegations regarding any "wrong" ratings during the limitations period and its non-existent allegations concerning the use the various government agencies made of the information provided via the RDS.  *See supra* pp. 6-8.  Even more fundamentally, however, the contention that Moody's services were of a diminished value is a legally insufficient theory of factual falsity.  *United*

*States ex rel. Absher v. Momence Meadows Nursing Ctr., Inc.*, 764 F.3d 699, 709-10 (7th Cir. 2014) (applying the Second Circuit's *Mikes* decision and explaining that "[i]t is not enough to offer evidence that the defendant provided services that are worth some amount less than the services paid for.  That is, a 'diminished value' of services theory does not satisfy this standard"); s*ee also United States v. Dialysis Clinic, Inc.*, No. 09 Civ. 710 (NAM/DEP), 2011 WL 167246, at *21 (N.D.N.Y. Jan. 19, 2011) (noting pleading deficiency where plaintiff did not allege that the defendant "failed to provide *any* services") (emphasis in original); *United States ex rel. McGee v. IBM Corp.*, 81 F. Supp. 3d 643, 665  (N.D. Ill. 2015) (dismissing claim where relator "d[id] not allege that *all* of the services performed by [the defendant] pursuant to the contract were entirely worthless") (emphasis added); *United States ex rel. Swan v. Covenant Care, Inc.*, 279 F. Supp. 2d 1212, 1221 (E.D. Cal. 2002) ("Swan does not allege that Emerald Gardens failed to provide *any* services to its patients.") (emphasis added).  Because there is no assertion, let alone well-pleaded allegations, that Moody's failed entirely to perform under any of the Exhibit C contracts, Kolchinsky has not sufficiently alleged factual falsity.

## **CONCLUSION**

For the foregoing reasons, Kolchinsky's allegations are deficient under Rule 9(b) and defective as a matter of law.  Nothing suggests that Kolchinsky could remedy these flaws in a hypothetical fourth complaint.  Accordingly, Moody's requests that the Second Amended Complaint be dismissed in its entirety and with prejudice.

June 3, 2016
New York, NY

SATTERLEE STEPHENS LLP

By:____/s/ Joshua M. Rubins___
James J. Coster
Joshua M. Rubins
Glenn C. Edwards
James I. Doty

230 Park Avenue, Suite 1130

12

New York, NY 10169
(212) 818-9200
(212) 818-9606/7 (fax)
*Attorneys for Defendants*