UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------- X
                                    :
UNITED STATES *ex rel.* KOLCHINSKY, :
                                    :
                        Plaintiff,  :
                                    :    12cv1399
            -against-               :
                                    :    OPINION & ORDER
MOODY'S CORP., *et al.*,            :
                                    :
                        Defendants. :
----------------------------------- X

WILLIAM H. PAULEY III, District Judge:

    Moody's Corporation and Moody's Investors Services, Inc. (collectively, "Moody's") move to dismiss Ilya Eric Kolchinsky's Third Amended Complaint. Kolchinsky brings this action under the qui tam provisions of the False Claims Act ("FCA"), 31 U.S.C. § 3729 et seq. In September 2017, this Court afforded Kolchinsky a final opportunity to satisfy the FCA's stringent pleading requirements. See United States *ex rel.* Kolchinsky v. Moody's Corp. ("Reconsideration Opinion"), 2017 WL 3841866, at *4 (S.D.N.Y. Sept. 1, 2017). For the reasons that follow, Moody's motion to dismiss is granted.

## BACKGROUND

    Familiarity with this Court's prior Opinions & Orders is presumed. See United States *ex rel.* Kolchinsky v. Moody's Corp. ("Moody's II"), 238 F. Supp. 3d 550 (S.D.N.Y. 2017); United States *ex rel.* Kolchinsky v. Moody's Corp. ("Moody's I"), 162 F. Supp. 3d 186 (S.D.N.Y. 2016). In short, Kolchinsky alleges that between 2004 and 2007, Moody's artificially inflated credit ratings for residential mortgage-backed securities and collateralized debt obligations to attract more business. (Third Amended Complaint, ECF No. 94 ("TAC")

¶¶ 14–16.) According to Kolchinsky, Moody's duped the Government into purchasing inaccurate credit-rating services. (TAC ¶ 40.)

On March 2, 2017, this Court dismissed Kolchinsky's Second Amended Complaint, holding that: (1) Kolchinsky failed to adequately plead materiality because the Government continued to pay Moody's despite evidence of rating inaccuracies; and (2) Kolchinsky failed to satisfy Federal Rule of Civil Procedure 9(b)'s pleading standard. Moody's II, 238 F. Supp. 3d at 558–60.

Kolchinsky moved for reconsideration. (See Notice of Motion, ECF No. 84.) Although this Court found Kolchinsky's arguments unpersuasive, it nonetheless recognized that Kolchinsky "did not have the benefit of . . . recent [Supreme Court] guidance on materiality when drafting his Second Amended Complaint or opposing Moody's motion to dismiss." Reconsideration Opinion, 2017 WL 3841866, at *4. Accordingly, this Court gave Kolchinsky one last chance to re-plead. Reconsideration Opinion, 2017 WL 3841866, at *4.

## DISCUSSION

I. Rule 9(b)

Qui tam actions are subject to Rule 9(b). United States *ex rel.* Chorches as Tr. for the Bankr. Estate of Fabula v. Am. Med. Response, Inc., 865 F.3d 71, 81 (2d Cir. 2017). "The point of Rule 9(b) is to ensure that there is sufficient substance to the allegations to both afford the defendant the opportunity to prepare a response and to warrant further judicial process." United States *ex rel.* Chorches, 865 F.3d at 87 (internal citation and alteration omitted). This heightened standard generally necessitates that a relator "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." United States *ex*

*rel.* Chorches, 865 F.3d at 81 (internal citation omitted). Whether particular allegations meet this threshold is a "case- and context-specific" inquiry. United States *ex rel.* Chorches, 865 F.3d at 81 (internal citation omitted).

Last time, this Court found that Kolchinsky "fail[ed] to allege either (a) specific and material false claims submitted to Government agencies after May 27, 2009 or (b) a scheme to do so after that date." Moody's II, 238 F. Supp. 3d at 559. In that pleading, Kolchinsky had attached a "twenty-page Microsoft Excel spreadsheet—printed from the internet—showing that Moody's had some contracts with Government agencies in the years 2007 and later." Moody's II, 238 F. Supp. 3d at 554. This Court held that such data could not "satisfy the requirements of Rule 9(b) —or even Rule 8." Moody's II, 238 F. Supp. 3d at 554.

Exhibit C to the Third Amended Complaint simply removes certain entries from Kolchinsky's earlier spreadsheet. Kolchinsky asserts that this provides "Moody's a clear road map for determining, based on the pleadings, which of its ratings were fraudulent" through "search[ing] for those ratings which used the alleged fraudulent methods and methodologies discussed hereafter." (TAC ¶ 56.) But shifting the burden to Moody's does not cure the pleading deficiency.

Nor does the Second Circuit's guidance in Chorches alter this result. In Chorches, the bankruptcy estate of a medical technician brought an FCA claim against an ambulance company. United States *ex rel.* Chorches, 865 F.3d at 75. The Second Circuit allowed the case to proceed even though the relator had "not identified actual invoices that were submitted to the federal government" because "the particular bills that were submitted for reimbursement [were] peculiarly within [the defendant's] knowledge." United States *ex rel.* Chorches, 865 F.3d at 82. The Court of Appeals held that relator's claims were sufficient

3

because he intricately detailed the "time period . . . during which the fraudulent scheme took place" as well as the "dates, both precise and approximate" of false claims and even "patient names" included in fraudulent bills. United States *ex rel.* Chorches, 865 F.3d at 83–84. All that he lacked was proof that the fraudulent bills had actually been submitted—i.e., the "specific documents containing false claims." United States *ex rel.* Chorches, 865 F.3d at 83–84. The Second Circuit made clear that pleading "on information and belief" still requires adducing "specific facts supporting a strong inference of fraud." United States *ex rel.* Chorches, 865 F.3d at 82 (internal citation omitted).

The Third Amended Complaint does not satisfy the standard articulated in Chorches. "[A]lleging a fraudulent scheme in detail" does not demonstrate that "false claims must have been submitted." Ameti *ex rel.* United States v. Sikorsky Aircraft Corp., 2017 WL 2636037, at *6 (D. Conn. June 19, 2017); see also United States *ex. rel.* Bilotta v. Novartis Pharm. Corp., 50 F. Supp. 3d 497, 510–11 (S.D.N.Y. 2014) ("Plaintiffs must allege the false claims themselves with sufficient particularity . . . merely alleging a fraudulent underlying scheme with particularity is not enough."). Kolchinsky's generalized claims do not plausibly connect Moody's purported ratings errors to claims submitted to the Government for payment, nor does it create a "strong inference" of fraud. See United States *ex rel.* Chorches, 865 F.3d at 82.

This holding is in line with the purpose of Rule 9(b)—"to discourage the filing of complaints as a pretext for discovery of unknown wrongs." Madonna v. United States, 878 F.2d 62, 66 (2d Cir. 1989) (internal citation omitted). Kolchinsky invites Moody's to find which claims were false based on false ratings, but a relator's contention "that discovery will unearth information tending to prove his contention of fraud, is precisely what Rule 9(b) attempts to

discourage." Madonna, 878 F.2d at 66; see also O'Brien v. Nat'l Prop. Analysts Partners, 936 F.2d 647, 676 (2d Cir. 1991) (pleading "by inference" is not a "license to base claims of fraud on speculation and conclusory allegations") (internal citation omitted).

In short, while Kolchinsky has been on notice of the need for particularity since this Court's dismissal of his first complaint, see Moody's I, 162 F. Supp. 3d at 197, the Third Amended Complaint does not remedy the pleading deficiencies previously identified.

II. Materiality

This Court dismissed the prior pleading because Kolchinsky failed to demonstrate materiality. "[A] misrepresentation about compliance with a statutory, regulatory, or contractual requirement must be material to the Government's payment decision in order to be actionable under the False Claims Act." Universal Health Servs., Inc. v. United States ex rel. Escobar, 136 S. Ct. 1989, 2002 (2016). This standard is "demanding" and requires showing more than "the Government's decision to expressly identify a provision as a condition of payment." Universal Health, 136 S. Ct. at 2003. In Universal Health, the Supreme Court determined that "if the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated," that demonstrates "very strong evidence that those requirements are not material." Universal Health, 136 S. Ct. at 2003–04.

Kolchinsky's "claims relate to a time period at which the Government—and the general public—was on notice of the very facts relied upon to support the fraud alleged here." Moody's II, 238 F. Supp. 3d at 559 (explaining there is "no serious dispute" that "Kolchinsky's allegations are substantially similar to stories previously reported in the media and investigated by Congressional committees," and citing numerous examples). Nonetheless, "the Government . . . continued to pay Moody's for its credit-ratings products each year." Moody's II, 238 F.

5

Supp. 3d at 559. According to Universal Health's guidance, this Court reasoned that the Government could not have found Moody's ratings errors to be material. Moody's II, 238 F. Supp. 3d at 559; see Universal Health, 136 S. Ct. at 2003–04.

The Third Amended Complaint attempts to bolster its showing of materiality. First, Kolchinsky contends that there was "no conclusive evidence of [Moody's] fraud" because Moody's "publicly denied [it]." (TAC ¶ 53.) While this is a relevant consideration, it does not counter the substantial evidence existing at that time demonstrating misconduct, including investigations by the Government itself. And through all of this, the Government not only continued to pay Moody's, but also entered into new service contracts. (TAC, Ex. C.; see also Reconsideration Opinion, 2017 WL 3841866, at *2–3; Moody's II, 238 F. Supp. 3d at 559–60.) "[M]ateriality looks to the effect on the likely or actual behavior of the recipient of the alleged misrepresentation." Universal Health, 136 S. Ct. at 2002 (internal citation and alterations omitted, emphasis added).

United Health never held that actual knowledge equates to clear irrefutable proof of wrongdoing. Accord D'Agostino v. ev3, Inc., 845 F.3d 1, 7 (1st Cir. 2016) (Government's failure to deny reimbursement in wake of allegations "cast[ed] serious doubt" on materiality of fraudulent misrepresentations alleged); United States v. Sanford-Brown Ltd., 840 F.3d 445, 447–48 (7th Cir. 2016) (Government's continued payment after multiple agencies' investigations demonstrated lack of materiality).

Second, Kolchinsky argues that the Government found Moody's actions material because it ultimately prosecuted Moody's. (TAC ¶ 51). But the Government, when filing a Statement of Interest in this action, explained that its settlement with Moody's bears "no nexus" to Kolchinsky's claims. (Statement of Interest of the United States in Connection with Relator's

6

Rule 59(e) Motion to Alter Judgment, ECF No. 90, at 2 n.2, 6 n.4 ("The FIRREA settlement concerned Moody's representations to or affecting federally insured financial institutions, and did not involve a federal victim or false claims to the Government.").)

Kolchinsky also challenges this Court's methods in dismissing his prior Complaint, arguing that it took improper judicial notice of "congressional sources, studies, and media reports" to determine whether the Government knew of Moody's alleged fraud. (Memo. of Law in Opp. to the Moody's Defendants' Mot. to Dismiss the Plaintiff-Relator's Compl., ECF No. 104 ("Kolchinsky's Opp."), at 6.) But on a Rule 12(b)(6) motion, a court "may [] take judicial notice of matters of public record." Reisner v. Stoller, 51 F. Supp. 2d 430, 440 (S.D.N.Y. 1999) (emphasis added). This includes press coverage and prior pleadings. Staehr v. Hartford Fin. Servs. Grp., Inc., 547 F.3d 406, 425 (2d Cir. 2008); Eaves v. Designs for Fin., Inc., 785 F. Supp. 2d 229, 244–45 (S.D.N.Y. 2011).

Indeed, Kolchinsky references congressional investigations and news articles when they suit his argument. (See TAC ¶¶ 21, 23.) He cannot have it both ways by arguing that this Court may not take notice of other articles and congressional findings. And this Court did not use those reports to determine a disputed fact, like whether Moody's ratings were actually flawed. Rather, they show something indisputable—that there existed multiple "credible public reports of inaccuracies" at the time the Government continued to pay Moody's. Reconsideration Opinion, 2017 WL 3841866, at *2; cf. Staehr, 547 F.3d at 425 (in securities case, court could "take judicial notice of the fact that press coverage . . . contained certain information, without regard to the truth of their contents") (emphasis in original). In short, this Court was entitled to take judicial notice of these investigations as "strong evidence" that the Government did not find Moody's actions material. See Universal Health, 136 S. Ct. at 2003–04.

7

While Kolchinsky is correct that the Government's decision to keep paying is not the be-all and end-all in determining materiality, the Supreme Court specifically identified it as a major factor in this determination. Universal Health, 136 S. Ct. at 2003–04.

Determining "materiality is essentially a matter of common sense rather than technical exegesis of statutes and regulations." United States ex rel. Gelman v. Donovan, 2017 WL 4280543, at *5 (E.D.N.Y. Sept. 25, 2017); see also Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to drawn on its judicial experience and common sense."). Common sense circles this Court back to its original conclusion.[1]

III. Fraudulent Inducement

The Third Amended Complaint adds a claim of fraudulent inducement. Under that theory, if a contract is "'induced by the [defendants'] frauds, claims for payment based on those contracts [are] also fraudulent." United States v. Wells Fargo Bank, N.A., 972 F. Supp. 2d 593, 623 (S.D.N.Y. 2013) (internal alteration omitted) (quoting United States ex rel. Marcus v. Hess, 317 U.S. 537, 542 (1943)). Put differently, "the use of fraudulent information to induce the Government to provide [payment] on a contract constitutes a false claim under the FCA." Wells Fargo Bank, N.A., 972 F. Supp. 2d at 623 (quoting United States v. Eghbal, 548 F.3d 1281, 1283 (9th Cir. 2008)); see also United States ex rel. Feldman v. van Gorp, 697 F.3d 78, 91 (2d Cir. 2012) ("[U]nder a fraudulent inducement theory, subsequent claims for payment made

---

[1] After briefing was complete, Kolchinsky submitted a letter attaching a statement by Senator Chuck Grassley in the Congressional Record. (See Letter, ECF No. 107). In his statement, Senator Grassley expresses concern regarding the weight that courts place on Government knowledge in determining materiality. See 164 Cong. Rec. S892-93 (daily ed. Feb. 13, 2018) (statement of Sen. Grassley). While this Court respects Senator Grassley's comments, views expressed by Congress subsequent to a statute's enactment are generally disfavored in interpreting a statute's meaning. See Sullivan v. Finkelstein, 496 U.S. 617, 628 n.8 (1990); United States v. United Mine Workers of Am., 330 U.S. 258, 281–82 (1947); see also United States v. Prince, 361 U.S. 304, 332 (1960) ("[T]he views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one.").

8

under the contract that were not literally false, because they derived from the original fraudulent misrepresentation, are also actionable false claims.") (internal citation and alterations omitted).

But fraudulent inducement, like legal falsity, requires establishing materiality. See D'Agostino, 845 F.3d at 7; United States *ex rel.* Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 378 (4th Cir. 2008). If the Government did not find the evidence of Moody's false ratings to be material, it is dubious that it found the statements inducing it to purchase those ratings services any more material.

More problematic is Kolchinsky's failure to tie alleged fraudulent statements to the Government's decision to purchase Moody's services. In a fraudulent inducement claim, a plaintiff must show that "the defendant made fraudulent misrepresentations to the government to induce it to enter a contract." United States *ex rel.* Lacey v. Visiting Nurse Serv. of N.Y., 2017 WL 5515860, at *6 (S.D.N.Y. Sept. 26, 2017) (emphasis added). He must also "plead facts demonstrating that the government relied on the statement"—i.e., that it was so induced. United States *ex rel.* Platz v. Bank of Am. Corp., 2016 WL 1298985, at *8 (S.D.N.Y. Mar. 31, 2016).

Kolchinsky pleads that Moody's made false misrepresentations, and that the Government bought Moody's rating services, but fails to connect them. No allegation plausibly and specifically pleads that Moody's made a misrepresentation to a government agency, that Moody's intended that statement to induce that agency's purchase, and that the agency was so induced. See United States *ex rel.* Lacey, 2017 WL 5515860, at *10 (dismissing fraudulent inducement claim based on failure to show misrepresentation was made to the Government or that the Government was induced by the misrepresentation). Allegations that fraudulent representations "could have" or "might have" induced the Government are insufficient. Accord D'Agostino, 845 F.3d at 7. In fact, it seems likely that altered ratings or statements concerning

9

their accuracy were not made to lure the Government into future contracts, but for Moody's to drum up new business with issuers. (See TAC ¶¶ 15–19.)

Kolchinsky proposes that the Court backfill the gaps in his pleading by making certain assumptions. (Kolchinsky's Opp. at 4–5.) First, he argues that this Court should assume that Moody's misrepresentations must have been made to keep the Government as a customer. Second, he contends that this Court should assume that because the Government entered into subsequent contracts with Moody's, the Government must have been induced. This Court cannot connect those dots. All that is clear from the Third Amended Complaint is that the Government entered into new contracts with Moody's around the same time that Moody's made its false statements. Kolchinsky asserts that discovery will provide the details, but when a relator's allegations are insufficiently pled, dismissal is the proper course. See United States *ex rel.* Lacey, 2017 WL 5515860, at *10; accord Pencheng Si v. Laogai Research Found., 71 F. Supp. 3d 73, 92–93 (D.D.C. 2014) (False Claims Act claims dismissed because although the plaintiff alleged several false statements, he failed to show they were made to the Government in connection with a requested claim for payment.).

IV. Factual Falsity

Factual falsity is what the False Claims Act targets. See United States v. McNinch, 356 U.S. 595, 599 (1958) (False Claims Act developed from congressional testimony "paint[ing] a sordid picture of how the United States had been billed for nonexistent or worthless goods, charged exorbitant prices for goods delivered, and generally robbed in purchasing the necessities of war"). The paradigm for factual falsity is a government contractor requesting payment for goods or services not provided, such as delivering "crates labeled 'muskets' . . .

[which are] in fact filled with sawdust." Michael Holt & Gregory Klass, Implied Certification under the False Claims Act, 41 Pub. Cont. L.J. 1, 15–16 (2011); see 31 U.S.C. § 3729(a)(1)(A).

This Court previously determined that Kolchinsky alleged legal falsity, not factual falsity. He "d[id] not plead that Moody's failed to provide any credit ratings, or that the ratings it provided were entirely worthless." Moody's II, 238 F. Supp. 3d at 557. Rather, his allegations were that Moody's ratings "differed in quality and accuracy from the ratings it promised to Government agencies." Moody's II, 238 F. Supp. 3d at 557. The Third Amended Complaint does not allege that Moody's failed entirely to provide rating services to the Government, only that some portion of those ratings were inaccurate. The Government received what it paid for—access to Moody's ratings.

Although Kolchinsky avers that factual falsity can be established through a service being "entirely worthless," (see, e.g., TAC ¶¶ 45, 294), that requires "the performance of the service [to be] so deficient that for all practical purposes it [was] the equivalent of no performance at all." Mikes v. Straus, 274 F.3d 697, 703 (2d Cir. 2001), abrogated on other grounds by Universal Health Servs., 136 S. Ct. 1989. Kolchinsky cannot demonstrate that Moody's ratings service was so deficient that it was akin to no service at all—he acknowledges that not all, only some, of Moody's ratings were erroneous. (TAC ¶¶ 26, 31.) Kolchinsky's rejoinder that factual falsity can be shown through Moody's assurances regarding the accuracy and reliability of its sources is insufficient. Cf. United States *ex rel.* Hussain v. CDM Smith, Inc., 2017 WL 4326523, at *6 (S.D.N.Y. Sept. 27, 2017) (engineering firm's hiring of unqualified contractors, improperly installing air-conditioning, and "general incompetence" did not reach level of factual falsity).

## CONCLUSION

For the foregoing reasons, Moody's motion to dismiss the Third Amended Complaint is granted. The Clerk of Court is directed to terminate the motion pending at ECF No. 100. This case remains closed.

Dated: March 13, 2018
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.